Lee G. SVEDLUND, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. 7581.

Court of Appeals of Alaska.

Oct. 28, 1983.

Larry Cohn, Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, for appellant.

Dennis P. Cummings, Asst. Mun. Prosecutor, Allen M. Bailey, Mun. Prosecutor, and Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

On November 1, 1982, Lee G. Svedlund was arrested for driving while intoxicated, AMC 9.28.020(A), refusal to submit to a breathalyzer, AMC 9.28.022(C),[1] and resist-

---

1. AMC 9.28.022(C) provides: "Refusal to submit to the chemical test of breath authorized by AMC 9.28.021 is a misdemeanor." AMC 9.28.021 provides:

A person who operates, drives or is in actual physical control of a motor vehicle within the municipality or who operates an aircraft as defined by AMC 9.28.020E.1 or who operates a watercraft as defined by AMC 9.28.020E.2 shall be considered to have given consent to a chemical test or tests of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if lawfully arrested for an offense

ing an officer, AMC 8.05.530(a). Svedlund was read a standard implied consent warning informing him that sanctions, including loss of his driver's license, could be imposed for refusing to submit to a breathalyzer. In addition, he was informed that refusal to submit to a breathalyzer was a misdemeanor. Svedlund was not advised of his *Miranda* rights, nor was he given an opportunity to contact an attorney. Svedlund refused to submit to a breathalyzer. Svedlund was acquitted of DWI and the resisting charge was dismissed. He was convicted of refusal to submit to a breathalyzer. Svedlund raises several constitutional questions on appeal. We affirm.

## I. ADVISING DWI SUSPECT OF *MIRANDA* RIGHTS

■ Svedlund contends that he should have been advised of his *Miranda* rights prior to being requested to submit to a breathalyzer. Certain warnings[2] must be given to a suspect who is in custody[3] and is interrogated[4] to secure the privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*"

arising out of acts alleged to have been committed while the person was operating, driving or in actual physical control of a motor vehicle or operating an aircraft or a watercraft while intoxicated. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable ground to believe that the person was operating, driving, or in actual physical control of a motor vehicle or operating an aircraft or a watercraft in the municipality while intoxicated.

2. Prior to questioning, police must advise a suspect that "he had a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966).

3. In *Hunter v. State,* 590 P.2d 888, 895 (Alaska 1979), the supreme court stated that the determination of whether a person is in "custody" must be made on a case-by-case basis. The

*South Dakota v. Neville,* —— U.S. ——, —— n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748, 759 n. 15 (1983). *See also Johnson v. State,* 662 P.2d 981, 987 (Alaska App.1983) (police request that suspect submit to combing for public hair did not constitute interrogation); *Coleman v. State,* 658 P.2d 1364, 1365–66 (Alaska App.1983) (since there is no constitutional right to refuse to take the breathalyzer examination, the refusal cannot be protected by the privilege against self-incrimination).

■ If Svedlund made statements or answered questions at the time he was asked to submit to a breathalyzer, then those questions and answers might have constituted an interrogation. No such comments or questions were alleged in this case. We therefore hold that Svedlund's constitutional rights were not violated by not informing him of his *Miranda* rights prior to asking him to take the breathalyzer exam. *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980) (police words or actions "normally attendant to arrest and custody" do not constitute interrogation); *Palmer v. State,* 604 P.2d 1106, 1109 (Alaska 1979) (*Miranda* warnings not required prior to administering sobriety tests).

court adopted a reasonable person standard which examines the circumstances and determines if a reasonable person felt free to break off police questioning and depart. Three types of facts are relevant and must be considered prior to the determination: (1) facts intrinsic to the interrogation; (2) facts pertaining to events before the interrogation; and (3) what happened after the interrogation.

4. "Interrogation" refers to "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980). The term encompasses not only express questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689 (footnotes omitted). The focus is on "the perceptions of the suspect, rather than the intent of the police." *Id.*

## II. CONSTITUTIONAL RIGHT TO COUNSEL

In *Copelin v. State,* 659 P.2d 1206 (Alaska 1983), the Alaska Supreme Court held that a person suspected of driving while intoxicated had a statutory right to contact an attorney before deciding whether or not to submit to a breathalyzer test if (1) he requested an opportunity to contact an attorney, and (2) granting the request would not involve a delay long enough to impair test results. *Id.* at 1211–12. In this case, Svedlund alleges that he was not afforded an opportunity to contact an attorney and the municipality concedes this point. However, the record does not show that Svedlund ever requested an opportunity to contact counsel. *Cf. Graham v. State,* 633 P.2d 211, 214 (Alaska 1981) (there is no right to have counsel *present* before being required to take a breathalyzer).

Svedlund argues that there is a constitutional right to contact an attorney prior to deciding whether or not to submit to a breathalyzer which is independent of any statutory right. This issue was not addressed in *Copelin.* In *Anchorage v. Geber,* 592 P.2d 1187, 1192 (Alaska 1979), the court held that police have no duty to advise a suspect of any constitutional right to have counsel present while performing field sobriety tests. However, in *Blue v. State,* 558 P.2d 636 (Alaska 1977), the court stated that there was a right to have counsel present at a pre-indictment lineup "unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation." *Id.* at 642 (footnote omitted). The *Geber* court distinguished *Blue* by pointing out that field sobriety tests are indicators of the degree of impairment existing at the time of the suspected offense, and thus they must be performed as soon thereafter as

possible. 592 P.2d at 1192. The reason for requesting a breathalyzer is the same as that for requesting field sobriety tests: to preserve evidence of intoxication.

The constitutional right to counsel exists " 'at any stage of the prosecution . . . in court or out, where counsel's absence might derogate from [the accused's] right to a fair trial.' " *People v. Craft,* 28 N.Y.2d 274, 321 N.Y.S.2d 566, 270 N.E.2d 297, 299 (N.Y.1971) (quoting *United States v. Wade,* 388 U.S. 218, 226–27, 87 S.Ct. 1926, 1931–32, 18 L.Ed.2d 1149, 1157 (1967)). We conclude, in reliance on *Geber* and *Palmer v. State,* 604 P.2d 1106, 1108–09 (Alaska 1979), that the breathalyzer exam is not a "critical stage" at which the constitution requires counsel's presence. While a defendant has a statutory right to contact counsel, Svedlund did not properly invoke that right. In any event, there is nothing in the record to show that the police affirmatively interfered with any attempt by Svedlund to obtain counsel. *See Johnson v. State,* 662 P.2d 981, 988–89 (Alaska App.1983). We therefore reject Svedlund's claim based upon the right to counsel.

## III. CONSTITUTIONALITY OF AMC 9.28.022

In *Jensen v. State,* 667 P.2d 188 (Alaska App.1983), this court was asked to rule on the constitutionality of an Alaska Statute criminalizing refusal to submit to a breathalyzer, AS 28.35.032(f), which was nearly identical to the ordinance being considered here.[5] We equated that statute to the statute criminalizing tampering with physical evidence, AS 11.56.610. We held that because there is no right to refuse to submit to a breathalyzer. *See AS 28.35.031; AMC 9.28.021 (implied consent), and because re-

---

**5.** AS 28.35.032(f) provides: "Refusal to submit to the chemical test of breath authorized by AS 28.35.031 is a class A misdemeanor. AS 28.35.-031 provides:

A person who operates or drives a motor vehicle in this state . . . shall be considered to have given consent to a chemical test or tests of a person's breath for the purpose of determining the alcoholic content of the per-

son's blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle . . . . The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle . . . in this state while intoxicated.

fusal to submit effectively conceals evidence of drunk driving, penalizing refusal "serves the legitimate legislative goals of deterring such refusals and insuring that those who refuse gain no benefit by their refusal." *Jensen v. State,* 667 P.2d at 190. *See Coleman v. State,* 658 P.2d 1364, 1365 (Alaska 1983).

■ Svedlund argues that AMC 9.28.022 violates his state and federal constitutional equal protection guarantees. The United States Constitution ensures that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1; the Alaska Constitution provides: "[a]ll persons are equal and entitled to equal rights, opportunities, and protection under the law." Alaska Const. art. I, § 1. To survive a federal equal protection challenge, the legislature must have a rational basis for choosing the statute as a means of attaining a permissible legislative goal.

> The applicable test ... is "whether the classification is reasonable, possesses some rational connection to the measure's legitimate purpose and treats all within the class alike." Under this test, legislation is presumed to be reasonable, and any reasonably conceivable facts justifying the classification will be accepted.

*Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255, 1262 (Alaska 1980) (footnotes omitted). Under the more restrictive Alaska test, the court looks to the legislative purpose.

> It must be determined that this purpose is legitimate, that it falls within the police power of the state. Examining the means used to accomplish the legislative objectives and the reasons advanced therefore, the court must then determine whether the means chosen substantially further the goals of the enactment. Finally, the state interest in the chosen means must be balanced against the nature of the constitutional right involved.

*State v. Erickson,* 574 P.2d 1, 12 (Alaska 1978) (footnotes omitted). In essence, then, Alaska courts "apply a single test which is ... flexible and dependent upon the importance of the rights involved. Based on the nature of the right, a greater or lesser burden is placed on the state to show that the classification has a fair and substantial relation to a legitimate governmental objective." *Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d at 1264 (footnote omitted).

■ Svedlund's equal protection argument is similar to the due process argument we rejected in *Jensen.* Essentially, he argues that there is no connection between his refusal to submit to a breathalyzer test and the public purpose of ridding the highways of drunk drivers. As in *Jensen,* we find that the nexus between the purpose of the law, *i.e.,* to facilitate investigations of drunken driving by producing usable evidence, is sufficiently related to the means chosen, *i.e.,* sanctioning those who hinder the production of evidence. Thus, the Alaska equal protection test and, *a fortiori,* the federal test, are satisfied even if those tests are more stringent than the substantive due process test considered in *Jensen.* We conclude that punishing a refusal to take a breathalyzer test bears a fair and substantial relation to the legitimate governmental objective of gathering evidence of possible drunken driving.

■ Svedlund also argues that the ordinance violates his privilege against self-incrimination.[6] In *Coleman v. State,* 658 P.2d 1364, 1365 (Alaska App.1983), we held that because there was no right to refuse to take a breathalyzer, a refusal was not privileged by the fifth amendment. In *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) the Court held, "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *Neville,* —— U.S. at ——, 103 S.Ct. at 923, 74 L.Ed.2d at 759

---

6. No person "shall be compelled in any criminal case to be a witness against himself." U.S.

Const. amend. V; Alaska Const. art I, § 9.

(footnote omitted). We adopt the holding of *Neville* and the reasoning in *Coleman* and conclude that enforcement of the ordinance did not violate Svedlund's state or federal privilege against self-incrimination.

## IV. CONSTITUTIONALITY OF CRIMINALIZING ASSERTION OF RIGHTS

Svedlund argues that there is a constitutional right to refuse to consent to a search.[7] *See Padgett v. State,* 590 P.2d 432, 434 (Alaska 1979). He reasons that a breathalyzer examination is a search and consequently concludes that sanctioning his refusal constitutes an impairment of his right to be free of unreasonable searches. *See Elson v. State,* 659 P.2d 1195, 1199 (Alaska 1983).

Assuming *arguendo* that the breathalyzer could be construed as a "search," the police may lawfully search incident to an arrest. *McCoy v. State,* 491 P.2d 127, 130–31 (Alaska 1971). A suspect cannot be prosecuted for refusal to submit to a breathalyzer unless there is probable cause to believe he was driving while intoxicated. *See Jensen v. State,* 667 P.2d 188, 190 n. 2 (Alaska App.1983). We conclude that offering Svedlund a breathalyzer examination, where there was independent evidence establishing probable cause to charge him with driving while intoxicated, was a lawful search incident to an arrest. Prosecuting Svedlund for refusing the test did not violate his fourth amendment rights.

## V. ADEQUACY OF IMPLIED CONSENT WARNING

Svedlund argues that he received inadequate warnings as a matter of law and was therefore entitled to a judgment of acquittal.[8] Although Svedlund was warned that refusal to take a breathalyzer was a misdemeanor and would result in loss of his driver's license, he was not specifically told that refusal would result in a mandatory jail term.

In *Copelin v. State,* 659 P.2d 1206 (Alaska 1983), the court said:

Although an arrestee may be without the advice of counsel, he is entitled to a warning by the police. The police are not required to inform the arrestee that he has the right to refuse; however, *if he does refuse, he must be advised of the consequences flowing from his refusal* and be permitted to reconsider his refusal in light of that information.

*Id.* at 1212 n. 15 (emphasis added; citation omitted). In *Copelin* the court was considering the refusal to take a breathalyzer examination in the context of a prosecution for driving while intoxicated or driving with a .10% blood-alcohol level. In such cases the prosecution offers the refusal as circumstantial evidence to show consciousness of guilt. Thus the supreme court was establishing a foundation for admitting refusal evidence. The court had previously indicated a distrust of consciousness of guilt evidence based on silence in the face of accusations and refusals to provide evidence. *See Elson v. State,* 659 P.2d 1195, 1201 (Alaska 1983). The court, however, did not address refusal to supply physical characteristic evidence. *See id.* at 1199. By requiring that the arrestee be informed of the consequences of his refusal the court meant to ensure that the refusal would in fact support an inference of guilt.

---

7. "The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated." Alaska Const. art. I, § 14. *See also* U.S. Const. amend. IV.

8. AMC 9.28.022(A) states that a suspect will not be forced to submit to a breathalyzer if he refuses to submit after being advised that:

1. his or her refusal will, if that person was arrested while he or she was operating, driving, or in actual physical control of a motor vehicle, result in the suspension, denial or revocation of his or her license or his or her nonresident privilege to drive; and
2. the refusal may be used against him or her in a civil or criminal action or proceeding arising out of an act alleged to have been committed by him or her while operating or driving a motor vehicle or operating an aircraft or a watercraft while intoxicated; and
3. the refusal is a misdemeanor.

These warnings must be given as a prerequisite to prosecution for refusal to take the breathalyzer examination.

■ In this case, refusal to take the test is the offense, not merely evidence of the offense. Further, the warnings are not inferred by implication but are required by the ordinance. Nevertheless, we are satisfied that the warnings required by the ordinance constitute a foundation for admission of the evidence of a defendant's refusal and are not separate elements of the offense to be proved to a jury. *See* A.R.E. 104(a). The warnings are thus analogous to the *Miranda* warnings which must be shown as a foundation for the introduction of any confession or admission obtained through interrogation from a suspect in custody.

■ The warnings are not totally irrelevant at trial. *See* A.R.E. 104(e). In order to prove a violation of the ordinance the city must prove both an *actus reus, i.e.,* refusal to submit to a test, and a *mens rea.* The ordinance does not prescribe a *mens rea* and we have not previously decided what mental state is required. *Cf. Jensen v. State,* 667 P.2d 188, 190 n. 1 (Alaska App. 1983) (discussing similar state statutes). Although AMC 9.28.022 does not specify a *mens rea* we can infer, at the very least, a negligence standard, *i.e.,* a "know or reasonably should know" standard. *See State v. Rice,* 626 P.2d 104, 110 (Alaska 1981). The warnings required by the ordinance might be relevant on the issue of *mens rea.*

■ It is important to understand, however, for purposes of *mens rea* that it is not Svedlund's knowledge of his intoxication or of the adverse consequences he will suffer if he refuses to take the breathalyzer examination that is in issue, but his knowledge of

the purpose and the significance of the breathalyzer test, and his awareness that he is required to take the test. Evidence that he was told that the penalty for refusal was identical to the penalty for driving while intoxicated would bring home to the suspect the fact that he was required by law to take the test in order to produce evidence of the amount of alcohol in his blood, that the evidence was significant, and that he would obtain no advantage from refusing the test.

The municipality must show as a proper foundation for admission of the refusal that the specific warnings set out in the ordinance were given. The municipality sustained that burden in this case. Whether additional information should be given a suspect is less clear.[9]

■ It is possible that the municipality could establish a sufficient foundation that Svedlund knew or should have known that the breathalyzer examination was intended to produce material evidence of the offense and that he was legally required to take the examination, without necessarily showing that the specific penalties for refusal were mentioned. The adequacy of the warning given to a DWI suspect of the consequences flowing from refusal to submit to a breathalyzer should be determined on a case-by-case basis. Merely informing the suspect that refusal is a misdemeanor complies with the letter of the ordinance and does not violate due process as a matter of law. However, evidence of the defendant's knowledge of the consequences may be presented to the jury to consider and

**9.** Law enforcement authorities will no doubt develop form warnings to be given defendants to ensure admission of any refusal at trial. We would strongly urge that at a minimum such warnings inform the defendant that he is under arrest for driving while intoxicated, that he is required by law to submit to a breathalyzer examination to determine his blood-alcohol level as evidence of the offense, that he will not be forced to take the test over his refusal but if he refuses to take the test (1) he will lose his right to operate a motor vehicle, (2) the refusal can be used against him in court as evidence of his intoxication, and (3) that the refusal is itself a misdemeanor, a crime for which he will receive

a mandatory minimum three days in jail and could receive up to one year's imprisonment. The suspect should also be told that the penalties for refusing a breathalyzer are identical to the penalties for driving while intoxicated.

The police have no interest in promoting crime. Since the penalties for drunk driving are identical to the penalties for refusing a test, a person refusing must be motivated by either incompetence, ignorance or stubbornness. Adequate warnings serve to insure that a refusal will not be based on ignorance and that the obvious legislative goal of encouraging those accused of drunk driving to take the test will be served.

weigh to the extent that it is relevant to the *mens rea* element of the crime.

 In this case, Svedlund testified that he understood "misdemeanor" to mean that he could be fined. He moved for a judgment of acquittal on the ground that he was unaware of the true "consequences" of his refusal, *i.e.,* a potential jail term. The court ruled that it was up to the jury to determine whether it was fair advice to apprise Svedlund that refusal to submit to a breathalyzer was a misdemeanor. The court instructed the jury that refusal must be knowing and "[i]f the Municipality [by and through the police officers involved] fairly advise the defendant of the consequences of refusing the test, and a reasonable person would, but the defendant does not understand those consequences because of his consumption of alcohol, he knowingly refuses the test." We do not necessarily approve this instruction [10] but we do agree with the trial judge that a warning of the consequences of refusal contained in AMC 9.28.022(D), which describes the potential jail sentences, may, where relevant to the defendant's theory of the case, be considered by the jury on the issue of *mens rea* along with those penalties described in AMC 9.28.022(A).

 We stress, however, that the ultimate issue on the question of *mens rea* is knowledge that the test is desired for use in evidence and is legally required and not knowledge that the refusal has certain legal consequences. Svedlund did not object to the instructions in question or request an instruction tying the offense more closely to concealment of evidence. Therefore, it is not necessary for us to address that issue further.

 In conclusion, while evidence of the warnings given may have been relevant to the issue of *mens rea,* the absence of more detailed warnings regarding penalties for refusal did not deprive Svedlund of due process or warrant a directed verdict of acquittal in his favor. We are satisfied that the record establishes a sufficient foundation for admission of Svedlund's refusal to take the breathalyzer test, and that the instructions on *mens rea* were not plain error. On the record, a reasonable jury could differ under the instructions given by the court in deciding whether the municipality proved beyond reasonable doubt that Svedlund knew or should have known that the breathalyzer test was intended to establish material evidence on the issue of his driving while intoxicated. Consequently, he was not entitled to a judgment of acquittal.[11]

The judgment of the district court is AFFIRMED.

---

**10.** Our remarks in *Jensen v. State,* 667 P.2d 188, 190 n. 1 (Alaska App., 1983) are appropriate here:

> 1. A conviction for violation of AS 11.56.-610 requires proof of specific intent. AS 28.35.032(f) is silent regarding *mens rea* and no issue regarding *mens rea* is presented in this appeal. We therefore do not address the issue. *Compare Reynolds v. State,* 655 P.2d 1313 (Alaska App.1982) (discussing determinations of *mens rea* for fish and game violations where no *mens rea* is specified) *with Neitzel v. State,* 655 P.2d 325 (Alaska App. 1982) (discussing determinations of *mens rea* under the revised code where no *mens rea* is specified).

We specifically reserve judgment on the difficult question of intoxication as a defense to a charge of refusal to take the exam. *Compare Kimoktoak v. State,* 584 P.2d 25, 33–35 (Alaska 1978) (intoxication relevant to defendant's "knowledge" under former law) *with Neitzel v. State,* 655 P.2d 325, 334 (Alaska App.1982) (intoxication not relevant to "knowledge" as defined in revised code).

**11.** The evidence, including Svedlund's testimony, would also have permitted a jury to conclude that despite any intoxication, he knew he was required to take the test and that it was sought as evidence of his blood-alcohol level. We therefore need not reach the *mens rea* issue *sua sponte* in order to decide Svedlund's contention that he was entitled to a judgment of acquittal.