Tracy S. McCRACKEN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–214.

Court of Appeals of Alaska.

Aug. 31, 1984.

---

1. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

John M. Murtagh, Anchorage, for appellant.

Michael S. McLaughlin, Asst. Atty. Gen., Anchorage, James L. Hanley, Asst. Dist. Atty., and Thomas M. Wardell, Dist. Atty., Kenai, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

On May 25, 1983, Tracy S. McCracken was arrested for driving while intoxicated, AS 28.35.030, and refusal to submit to a breathalyzer test, AS 28.35.032(a). The DWI charge was subsequently dismissed. McCracken pled no contest to the refusal charge, reserving the right to appeal the rejection of his constitutional challenges to the statute. *See Oveson v. Anchorage*, 574 P.2d 801, 803 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251, 1257 (Alaska 1974) McCracken was subsequently convicted on the refusal charge, fined $600 and $300 suspended, and sentenced to thirty days with all but seventy-two hours suspended. McCracken appeals his conviction and we affirm.

McCracken raises several constitutional issues on appeal. He first contends that submission to a breathalyzer examination is a warrantless search, and since none of the exceptions to the warrant requirement apply, it is unreasonable and therefore unconstitutional.

■ This court has determined that a breathalyzer examination is "a reasonable search under the constitution because it is incident to arrest." *Burnett v. Anchorage*, 678 P.2d 1364, 1368 (Alaska App.1984). *See Svedlund v. Anchorage*, 671 P.2d 378, 384 (Alaska App.1983).[1] Therefore, McCracken's initial argument that a breathalyzer examination is an invalid search since it is made without a warrant is meritless.

■ McCracken next argues that his right to refuse to consent to a search, guaranteed under the fourth amendment to the United States Constitution and Article I, section 14, of the Alaska Constitution, is effectively destroyed under AS 28.35.032,[2]

---

1. *Burnett* and *Svedlund* involved convictions for refusal to submit to a breathalyzer in violation of AMC 9.28.022(A), (C). That statute is virtually identical to AS 28.35.032.

2. Alaska Statute 28.35.032 provides:
   *Refusal to submit to chemical test.* (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test as provided in AS 28.35.031 after being advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle, result in the suspension, denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or a water-

which criminalizes such refusal. He cites *Elson v. State*, 659 P.2d 1195 (Alaska 1983), in support of this argument. This issue was decided against McCracken in *Svedlund*, 671 P.2d at 384. We also elaborated in *Burnett* that sanctioning the refusal to take a breathalyzer does not violate the rule in *Elson*. *Burnett*, 678 P.2d at 1369.

■ McCracken also contends that it is a violation of his constitutional right to equal protection of the law[3] to incarcerate him, and not other offenders, for refusing to consent to a breathalyzer examination. Again, this court disposed of this issue in *Svedlund*, 671 P.2d at 383. Although the equal protection challenge in *Svedlund* was made on a different basis, that there was no connection between the refusal statute and the public purpose of eliminating drunk drivers, a similar analysis would apply here. In *Svedlund*, we recognized that Alaska courts apply a more stringent equal protection test than the federal courts, requiring that the state show that the classification in question "has a fair and substantial relation to a legitimate governmental objective." 671 P.2d at 383. We went on to say:

> [W]e find that the nexus between the purpose of the law, i.e., to facilitate investigations of drunken driving by producing usable evidence, is sufficiently related to the means chosen, i.e., sanctioning those who hinder the production of evidence. Thus, the Alaska equal protection test and, *a fortiori*, the federal test, are satisfied .... We conclude that punishing a refusal to take a breathalyzer test bears a fair and substantial relation to the legitimate governmental objective of gathering evidence of possible drunken driving.

*Id.* Under *Svedland*, there is no equal protection violation in making it a crime for those arrested for driving while intoxicated to refuse to submit to the breathalyzer examination.

McCracken's final argument is that by penalizing the refusal to submit to a breathalyzer, the state attaches an unconstitutional condition on the granting of the privilege to drive. He reasons that the condition that a driver will be imprisoned if he does not consent to a breathalyzer test improperly forces the driver to choose between relinquishing his liberty and relinquishing his fourth and fifth amendment rights by submitting to the breathalyzer examination. According to McCracken, the effect of this choice is "to chill the assertion of a citizen's Fourth and Fifth Amendment Rights."

In *Svedlund*, we decided that a refusal to submit to a breathalyzer was not privileged by the fifth amendment since there was no co-existent right to refuse to take the examination. 671 P.2d at 383–84. *See Coleman v. State*, 658 P.2d 1364, 1365–66 (Alaska App.1983). We also found nothing repugnant to the fourth amendment in penalizing the refusal to submit to a breathalyzer examination. *Svedland*, 671 P.2d at 384. Moreover, in *Burnett* we said: "[n]othing ... purports to preclude a statute making suppression of evidence a crime even though the conduct constituting the suppression of evidence might be characterized as resistance to a search. Such conduct is generally subject to sanction." 678 P.2d at 1369.

■ We also addressed the possible "chilling" effect on the exercise of fourth amendment rights:

> We also conclude that the "prejudicial effect" of the statute on the exercise of fourth amendment rights is virtually

---

craft while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given, except as provided by AS 28.35.035. ....

(f) Refusal to submit to the chemical test of breath authorized by AS 28.35.031(a) is a class A misdemeanor.

3. The United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Alaska Constitution provides "that all persons are equal and entitled to equal rights, opportunities, and protection under the law." Alaska Const. art. 1, § 1.

nonexistent. A defendant is entitled to certain warnings clarifying that he has no constitutional right to refuse the test. Thus there is little risk that he reasonably could be confused about his rights. Further, we see no reason to establish a privilege in this case because the defendant does not lose the right to contest probable cause to arrest by submitting to the breathalyzer. If the defendant was illegally stopped or arrested then his consent to the breathalyzer examination would be tainted by that illegal arrest. *Burnett*, 678 P.2d at 1369–70. Therefore, since McCracken does not relinquish any fourth or fifth amendment right to refuse to consent by actually consenting to the breathalyzer examination, it is not unconstitutional to condition his driving privilege on his giving that consent.[4]

The judgment is AFFIRMED.

SINGLETON, Judge, with whom BRYNER, Chief Judge, joins, concurring.

I agree fully with the court's disposition of this case. I believe additional comments are necessary, however, to respond to the arguments in McCracken's brief and particularly to certain of his contentions during oral argument.

All of McCracken's arguments depend upon a single legal proposition: a defendant's consent, in a constitutional sense, is necessary as a matter of law to validate the search of his lungs and the seizure of his breath pursuant to a breathalyzer examina-tion. In other words, McCracken reasons, he has a constitutional right to refuse a breathalyzer examination. He then derives two arguments from this proposition. First, he contends that the only constitutional justification for a breathalyzer examination is "implied consent", the proposition that a person's privilege to drive on the public highways is conditioned on his agreement to thereafter consent to a breathalyzer examination if he is stopped for drunk driving. McCracken points out that "implied consent" is not true consent in a constitutional sense because it is the product of coercion, in this case the threat of imprisonment and loss of the privilege to drive. Second, McCracken contends that the state may not constitutionally condition the grant of a privilege or right, such as the right to operate a motor vehicle on the highways, on the prospective surrender or relinquishment of a constitutional right, such as the right to be free of illegal searches and seizures. In his view, the statute penalizing refusal to submit to a breathalyzer test is therefore unconstitutional.

The answer to McCracken's argument is that a defendant has no constitutional right to refuse to submit to a breathalyzer examination. *See Copelin v. State,* 659 P.2d 1206, 1212–13 (Alaska 1983); *Graham v. State,* 633 P.2d 211, 214 (Alaska 1981); *Palmer v. State,* 604 P.2d 1106, 1110 (Alaska 1979); *Coleman v. State,* 658 P.2d 1364,

---

**4.** McCracken cites *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), in support of his argument that it is unconstitutional to prosecute him for exercising his fourth amendment rights. These cases are distinguishable. *Camara* involved the prosecution for refusal to consent to a warrantless health inspection of a dwelling. *See* involved prosecution for the refusal to consent to a warrantless fire department inspection of a commercial warehouse. Both *Camara* and *See* held that the administrative searches in question were protected by the fourth amendment and had to be conducted within the framework of the warrant procedure. *Camara,* 387 U.S. at 534, 87 S.Ct. at 1733, 18 L.Ed.2d at 938; *See,* 387 U.S. at 545, 87 S.Ct. at 1740, 18 L.Ed.2d at 947. The court in *Camara* specifically premised its holding on the fact that no emergency existed justifying a warrantless search. However, though no exception applied to the warrant requirement, no warrant was obtained. The court said, "we therefore conclude that appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." 387 U.S. at 540, 87 S.Ct. at 1737, 18 L.Ed.2d at 942. In this case we have concluded McCracken has no fourth amendment right to refuse to consent to the breathalyzer examination. Therefore, unlike *Camara* and *See,* McCracken has no constitutional right to insist upon a warrant prior to submitting to the breathalyzer examination, and may constitutionally be convicted for refusing to consent to the search.

1365–66 (Alaska App.1983). *See also Jensen v. State*, 667 P.2d 188, 190 (Alaska App.1983). Thus, it is incorrect to contend that a defendant's consent is a prerequisite to the validity of a breathalyzer examination. Moreover, so-called implied consent is a pure legal fiction whereby courts imply a consent to search which was never in fact given. *See* 2 W. LaFave, *Search and Seizure* § 8.2(1) at 676–77 (1978); 3 W. LaFave, *Id.* § 10.2(c) at 219–21, § 10.2(g) at 111–15 (1978 & Supp.1984). As LaFave suggests, conceptual difficulties in the implied consent doctrine could best be avoided by simply asking whether searches allegedly based on implied consent meet the reasonableness requirement of the fourth amendment. *Id.* at § 8.2(1). The justification for requiring a breathalyzer examination and sanctioning a refusal to submit to such an examination is that the examination is a search incident to an arrest. *Burnett v. Anchorage*, 678 P.2d 1364, 1366. (Alaska App.1984). A defendant's consent is therefore not necessary to justify the search.

McCracken makes three objections to this analysis, which he elaborated on during oral argument. First, he contends that, when the Alaska Supreme Court stated that there was no constitutional right to resist a breathalyzer examination, it was referring to the fifth amendment, not the fourth amendment. The Alaska Supreme Court, he continues, has never considered the fourth amendment implications of a breathalyzer examination.[1] In contrast, McCracken notes that in *Burnett v. Anchorage*, 678 P.2d 1364 (Alaska App.1984), and in *Svedlund v. Anchorage*, 671 P.2d 378 (Alaska App.1983), this court recognized the fourth amendment implications of a breathalyzer examination. Consequently,

McCracken argues that he does have a constitutional right to refuse to submit to a breathalyzer examination although that right is subject to certain recognized exceptions just like all fourth amendment rights. We addressed McCracken's argument in our decision in *Burnett*. In his concurring opinion, Chief Judge Bryner pointed out that the offer of a breathalyzer examination necessary to trigger a prosecution for refusal under AMC 9.28.022(c) can only be made after a valid arrest based upon probable cause to believe that the person has been driving under the influence of alcohol. Thus, a person validly arrested will always be searched incident to that arrest and will never have a fourth amendment right to resist. *Burnett*, 678 P.2d at 1371.

McCracken makes two other objections to an analysis of breathalyzer examinations predicated on a search incident to an arrest, though he concedes that theoretically a breathalyzer examination could be justified on this ground. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test of suspected drunk driver valid as search incident to arrest). McCracken contends that the theory is flawed when applied to breathalyzer examinations because of substantial factual differences between a breathalyzer examination utilizing the intoximeter 3000 and a typical blood test. A blood test, he reasons, could be administered by a physician or other trained person without the cooperation of the suspect by simply restraining the suspect, inserting a hypodermic needle into the suspect's vein, and obtaining a blood sample. However, McCracken contends, a breath test on an intoximeter 3000 is entirely different because the subject's cooperation is necessary to perform the test.[2] Consequently,

---

1. The supreme court specifically avoided the issue in *Elson v. State*, 659 P.2d 1195, 1199 (Alaska 1983) (expressing no opinion as to whether a defendant's refusal to provide nontestimonial evidence such as a breath sample is admissible at trial over the objection that admissibility chills exercise of fourth amendment rights).

2. Title Seven of the Alaska Administrative Code, section 30.020(b)(4) prescribes the procedures for the collection and analysis of breath samples:

> [W]hen the visual display indicates that the instrument is ready to accept the person's breath sample, instruct the person to blow into the mouth piece until the visual display indicates that a satisfactory sample has been obtained.

McCracken reasons, a defendant will always have the ability, both as a matter of physiology and physics, to consciously defeat the test by failing to provide a satisfactory breath sample.[3]

McCracken's argument confuses a legal concept, "consent", with a factual concept, "cooperation" or "assent". The two are substantially different. Consent in the constitutional sense is only required where the defendant has a legal right to refuse. As we have seen, a legally arrested defendant has no constitutional right to refuse a breathalyzer examination. True, he may fail to cooperate or give his assent to a breath test as a matter of fact, but failure to cooperate does not create a legal right where it would otherwise not exist. For example, a person's right to the security of his home depends, in part, on the cooperation of burglars in respecting that right; a person's right to the integrity of his automobile depends, in part, on a thief respecting that right; a person's right to the integrity of his or her person depends, in part, upon murderers and rapists respecting that right. Similarly, a police officer's right to a breathalyzer examination from a legally arrested driver depends, in part, upon the driver's cooperation in taking the test. However, a burglar's failure to cooperate does not give him a right to commit burglary; a thief's failure to cooperate does not give him a right to steal; a rapist's failure to cooperate does not give him a right to rape; a murderer's failure to cooperate does not give him a right to kill. By the same token, a drunk driver's failure to cooperate in furnishing a breath sample does not give him a legal right to withhold breathalyzer evidence. In all these cases, the state may legitimately impose a sanction for a defendant's failure to cooperate. *See Burnett v. Anchorage*, 678 P.2d at 1371–72 (Bryner, C.J., concurring).

McCracken's next objection is that even if the constitution does not require consent in a legal sense, the applicable statute does. He relies upon AS 28.35.032(a), which provides in pertinent part:

> If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in AS 28.35.031, after being advised by the officer that his refusal will ... result in the suspension, denial or revocation of his license, .... *a chemical test shall not be given.* [Emphasis added.]

McCracken's reliance on this section is misplaced. The legislature did not establish a legal right to refuse a test. It clearly did not intend to immunize a refusal

---

**3.** McCracken reasons that a satisfactory sample requires the suspect to expel air from the alveoli of the lungs. *See* 1B L. Gordy & R. Gray, Attorney's Textbook of Medicine § 9.02(5) (1983); 4A L. Gordy & R. Gray, *Id.* at § 205.-33(5). One writer notes:

> The basic principle governing the design of breath alcohol instruments is that a physiological relationship exists between the concentration of alcohol in expired alveolar air and in the blood.
>
> Available information indicates that 2.1 liters of expired alveolar air contain approximately the same quantity of alcohol as 1 milileter of blood.

1. R. Erwin, Defense of Drunk Driving Cases, § 18.01 at 18–7 (3d ed. 1984), *quoting,* Declaration of Ad Hoc Committee on Blood-Breath Alcohol Relationship, Indiana University (1972). In order to successfully capture breath for a test, the equipment operator must be sure that he has a true alveolar air sample in equilibrium with the suspect's blood for an accurate blood-alcohol determination. *Id.* at 18–14.52. The Intoximeter 3000 is designed to operate only if the suspect has expelled an alveolar air sample. Thus, McCracken continues, this court's assertion in *Burnett v. Anchorage,* 678 P.2d at 1364, 1368 n. 1, that a person's breath is constantly exposed to the public, is factually incorrect with regard to testable alcohol content, since alveolar "breath" must be consciously and forcibly expelled by the suspect. McCracken concludes that a suspect cannot be forced to produce alveolar air and therefore his consent to its extraction must be obtained. McCracken's arguments, though forcefully presented, do not really distinguish his case from that of a person forced to provide voice exemplars. *See United States v. Dionisio,* 410 U.S. 1, 14–15, 93 S.Ct. 764, 771–72, 35 L.Ed.2d 67, 79–80 (1973) (fourth amendment rights are not infringed by requiring defendant to make a voice exemplar; no expectation of privacy exists in that which was previously exposed to the public).

from sanction or otherwise protect non-cooperation. If it did, it would not have criminalized such a refusal and expressly made the refusal admissible in evidence against the defendant. What the legislature wished to avoid was a physical confrontation between the officer and an intoxicated defendant. Hence, the legislature permitted but did not condone refusal, and imposed sanctions for refusal in the form of criminal penalties and adverse evidentiary comment. There is no statutory right to refuse a breathalyzer examination in Alaska. See *Pena v. State*, 684 P.2d 864, 867 n. 6 (Alaska 1984) (implied consent statute creates a "power" not a "right" to refuse testing but the consequence of exercising that power is a statutory penalty for refusal).

McCracken's final contention is that even if his consent in a constitutional sense is not required to validate a breathalyzer test, there may be other situations in which his consent would be necessary to validate a warrantless search, such as a search of his house for drugs. To penalize his refusal to take the breathalyzer test might chill the readiness with which he and others similarly situated would resist other arguably unlawful searches. Relying on *Elson v. State*, 659 P.2d 1195, 1198 (Alaska 1983), McCracken argues that AS 28.35.032(a) must be struck down in order to protect the exercise of fourth amendment rights in unrelated situations. McCracken concedes that the supreme court expressly reserved the precise issue of adverse comment on a refusal to furnish breathalyzer evidence in *Elson* but contends that the court thoroughly foreshadowed the answer it would give when the issue was squarely before it.

McCracken's argument is without merit. As we discussed in *Burnett v. Anchorage*, 678 P.2d at 1369, in *Elson* the court was

dealing with a rule of evidence, not a statutory crime. While the state cannot enact a law which clearly violates the fourth amendment, enforcement of this statute does not violate any fourth amendment right. Since a valid arrest is always a condition precedent to a legally required breathalyzer examination, the fourth amendment will never be violated by such an examination if properly conducted. Speculation about the psychological effect of our holding on potential defendants faced with truly unrelated searches and seizures cannot justify invalidation of a statute enacted by the legislature.

Whether a test is taken or rejected, a defendant in McCracken's position is entitled to challenge his arrest at trial before evidence of the test or refusal to take it could be used against him. If his challenge to the arrest is sustained, all adverse evidence will be suppressed. Only if it is denied will prosecution proceed. He is thus in a more favorable position than most of those faced with a legislative "preferred response"[4] to a threat to a constitutional right.

A recent law review article by Professor Peter Weston and Attorney Stewart Mandell is helpful in understanding our rejection of McCracken's challenge to the statute. *See* Weston & Mandell, *To Talk, to Balk Or to Lie: The Emerging Fifth Amendment Doctrine of the Preferred Response*, 19 Amer.Crim.L.Rev. 521 (1982). While Weston and Mandell address the fifth amendment, their analysis is equally applicable to the assertion of fourth amendment rights. They reason that a legislature may constitutionally sanction one means of exercising a constitutional right so long as it permits alternate means that will fully vindicate the right. The discussion is illustrated by the plight of a witness

---

**4.** Relying upon Justice Powell's concurring opinion in *New Jersey v. Portash*, 440 U.S. 450, 462–63, 99 S.Ct. 1292, 1298–99, 59 L.Ed.2d 501, 512–13 (1979) (Powell, J., concurring), the authors of a recent law review article use the term "preferred response" to indicate the preferred

method of asserting a constitutional right as compared to other means of asserting the right which then may be sanctioned. Weston & Mandell, To Talk, to Balk or to Lie: The Emerging Fifth Amendment Doctrine of the Preferred Response, 19 Amer.Crim.L.Rev. 521, 522 (1982).

called to testify in a proceeding in which he might incriminate himself. He has essentially three choices in the words of the authors: to talk (to testify); to balk (to invoke the privilege of self-incrimination); or to lie. If the witness talks, he forfeits his fifth amendment rights. If he lies, he can be punished for perjury. The preferred response, therefore, is to invoke the privilege against self-incrimination and refuse to answer questions. *Id.* at 522–32. The authors note that the constitution protects an individual against *compelled* self-incrimination, which only comes into play after the state has acted wrongly by seeking to compel a person to become a witness against himself. They therefore ask rhetorically, "[w]hy should a person bear the burden of responding correctly to a choice he should never have to face?" *Id.* at 523. Their answer follows:

> The answer lies in the relationship between the substance of an individual's fifth amendment claims and the procedure by which he asserts such claims. An individual is constitutionally entitled to be free from state compulsion to incriminate himself. The state, however, has legitimate interests in requiring individuals to assert constitutional claims— including claims under the privilege of self-incrimination—by procedures that minimize the resulting burden on the state. The state's ability to prescribe procedural responses depends on: (1) whether the state prescribes a particular procedure for the assertion of fifth amendment claims, and (2) whether the procedure suffices to safeguard the fifth amendment interests of the individual. If the state prescribes such a procedure, and if the procedure is constitutional, it can require an individual to comply with the procedure or to forfeit his fifth amendment claim.

*Id.* at 523 (footnotes omitted).

The same analysis has even greater force in this case. The defendant wishing to assert his fourth amendment rights has two possible responses. He can refuse the breathalyzer test or he can take it. In either case, he may challenge the test thereafter. The state has clearly opted for the second response. The real question is therefore whether the procedure established by the state suffices to safeguard the fourth amendment interests of the defendant. As we have seen, the only fourth amendment interest is the defendant's right to be protected against arrest on less than probable cause. If he is properly arrested, he has no further fourth amendment right to refuse the breathalyzer examination. It appears clear that requiring him to take the test and later challenge the legality of his arrest at trial adequately protects the defendant's fourth amendment rights while meeting the state's legitimate need to gather evidence.

The preferred response serves the state's interests. First, an immediate test preserves the evidence, since breathalyzer evidence dissipates within a matter of hours. Second, the properly administered breathalyzer examination provides substantial evidence of intoxication, serving the substantial state interest in identifying drunk drivers. Third, the breathalyzer examination will be of value whether it inculpates or exculpates the defendant. If the defendant is exculpated, the matter is at an end and the defendant may go on his way. If the defendant is inculpated, he is removed from the road and appropriate sanctions will be forthcoming.

The preferred response also adequately protects fourth amendment rights. If the defendant was illegally arrested, he may prevent adverse consequences whether or not he takes the test. He is in a particularly advantageous position if he takes the examination, despite an unlawful arrest: if the result is favorable, he may then rely on the evidence and use it at trial to exculpate himself; if it is unfavorable, he may ensure that it will be suppressed at trial. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprints

obtained as a result of illegal detention suppressed). In summary, whether or not the defendant takes the breathalyzer test, his actions cannot be used against him as proof of intoxication or as a basis for restricting his license until he has had an opportunity to challenge the legality of his arrest. It is only if his challenge is rejected that adverse consequences follow his taking the test.[5]

**5.** At oral argument McCracken argued for the first time that AS 28.35.032(a) violates procedural due process. U.S. Const. Amend. XIV, § 1. He reasons that he must comply with the request for the test or suffer the penalty without a prior judicial determination that the police had probable cause to arrest him. However, whether or not the defendant takes the test, he does obtain judicial review of his arrest prior to use of the evidence against him. *Cf. Matanuska Maid, Inc. v. State,* 620 P.2d 182, 188–90 (Alaska 1980) (statutory scheme requiring either production of documents or incurring criminal liability for nonproduction upheld; judicial review is sufficient where statute provides for petition to modify or set aside investigative demand). His due process rights are therefore protected to a greater extent than the United States Constitution would apparently require. *See Illinois v. Batchelder,* —— U.S. ——, ——, 103 S.Ct. 3513, 3517, 77 L.Ed.2d 1267, 1271, (1983) (driver's right to a hearing before license revoked for refusing to submit to breathalyzer "accords him all, and probably more, of the process that the Federal Constitution assures"); *Mackey v. Montrym,* 443 U.S. 1, 19, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321, 335 (1979) (statute mandating summary suspension of driver's license for refusing to submit to a breathalyzer upheld; availability of prompt postsuspension hearing satisfies due process requirement). His greater Alaska due process rights would also be satisfied by this procedure. *See Graham v. State,* 633 P.2d 211, 215–16 (Alaska 1981).