Karen Everts WING, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10803.

Court of Appeals of Alaska.

Jan. 13, 2012.

Rehearing Denied Feb. 2, 2012.

1. *Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978) (emphasis added).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Robert John, Law Office of Robert John and Jason Beatty, Beatty's Law, LLC, Fairbanks, for the Appellant.

William A. Spiers, Assistant District Attorney, Fairbanks, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Karen Everts Wing was convicted of driving under the influence of alcohol. She argues the police prohibited her from accessing her cell phone, denying her the opportunity to talk with her attorney. Wing also argues that she did not knowingly and voluntarily waive her right to an independent chemical test. And she claims that she was unconstitutionally forced to commit a crime when she had to choose between providing a breath sample and refusing to submit to the breath test. Finally, she argues the breath test was not a valid search incident to an arrest. For the reasons explained here, we reject Wing's arguments and affirm her conviction.

### Background

After stopping Wing for several traffic offenses, Fairbanks Police Sergeant Gary Yamamoto arrested Wing for DUI and took her to the Fairbanks Police Department to administer a breath test and complete the DUI processing.

After Wing submitted to the breath test, Sgt. Yamamoto played a video explaining her right to an independent chemical test. The video informed Wing that she could speak with an attorney or medical personnel if she did not understand her rights. After watching this video, Wing could not decide whether she wanted to exercise her right to an independent chemical test. Sgt. Yamamoto offered to play the video for her again, which she declined.

Sgt. Yamamoto went over the independent chemical test form with Wing, discussed her options, and asked her if she wanted to make any phone calls. She said she wanted to make a phone call and said her cell phone was in her pocket. Sgt. Yamamoto indicated the police had a phone she could use. After Sgt. Yamamoto offered Wing the station phone, Wing made no further reference to her cell phone. Instead, she gave him a phone number, he dialed it, and she spoke to a co-worker for approximately five minutes.

When Wing still would not decide whether to obtain an independent test, Sgt. Yamamoto ultimately concluded Wing was refusing to decide whether to get an independent chemical test and terminated the processing. He told her that if she changed her mind between the station and the jail and wanted an independent chemical test to let him know. But Wing never requested an independent test.

Wing filed a motion to suppress the breath test result, arguing that she did not understand her right to an independent chemical test and that Sgt. Yamamoto denied her the right to call an attorney. At an evidentiary hearing, Wing testified that she wanted to use the cell phone in her pocket to retrieve her attorney's phone number, and that she would have called her attorney if she had been allowed to retrieve her phone. But she admitted she did not ask to make any phone calls other than the one she placed.

District Court Judge Raymond M. Funk found that Wing understood her right to an independent chemical test. He also found that Wing did not ask to make another phone call and that she did not ask to look up a number on her cell phone. Judge Funk concluded there was no basis to suppress the evidence from her breath test.

Wing filed a second motion to suppress, claiming her right to due process was violated because she was forced to choose between committing the crime of DUI by submitting to the breath test or committing the crime of refusing to take the breath test. She also argued the breath test was not a proper search incident to arrest. The court also denied this motion.

The court held a bench trial based on stipulated facts and found Wing guilty of DUI.

### Discussion

*The record supports the district court's conclusion that Wing knowingly and intelligently waived her right to an independent chemical test.*

 A DUI arrestee's "waiver of the right to an independent test 'is valid only if it is knowingly and intelligently made.'"[1] A defendant's waiver of her right to an independent chemical test is valid where the defendant understands her right to an independent test but is uncertain about whether exercising the right would benefit her.[2] Wing argues she did not understand the purpose of the independent test and that she was not allowed to talk to her attorney, who could have explained the test.

At the evidentiary hearing, Wing testified that she did not understand the independent test. She conceded she understood that she had the option to have an independent chemical test. But she asserted that she did not understand the purpose of having her blood drawn.

Judge Funk clarified Wing's position through a series of questions. He asked her, "So [your question was] the strategic question of whether it would be to your advantage in your arrest, [was that] what that was?" Wing answered, "Yes." Judge Funk then went on, "And anything beyond a strategic advantage? Because obviously, the police can't explain to you whether it's strategically to your advantage or not. It's not their role. Anything beyond that, that you didn't understand?" Wing replied, "No. I just didn't understand why I would want to have that done and ... how it [would] benefit me."

Based on Wing's testimony, Judge Funk found that she understood her right to an independent chemical test and merely did not know if getting a blood test would be advantageous to her defense. The record supports these findings.

### The police did not violate Wing's right to contact an attorney.

 Wing claims her constitutional and statutory rights to contact her attorney were violated because the officer did not allow her to access her attorney's phone number from her cell phone. She argues the trial court erred in finding that the officer did not interfere with her right to counsel under the Alaska Constitution and AS 12.25.150(b).

In *Svedlund v. Anchorage*, we decided that the administration of a mandatory breath test in a DUI investigation is not a critical stage at which an arrestee has the constitutional right to contact an attorney.[3] In *Babb v. Anchorage*, we decided that the arrestee's decision on whether to request an independent chemical test is not a critical stage at which the constitutional right to counsel attaches.[4] Wing does not cite or discuss these cases or any other law on this issue. We conclude that Wing's constitutional right to counsel was not implicated during the DUI processing.

 Under AS 12.25.150(b), however, an arrestee must be afforded a reasonable opportunity to consult with an attorney before being required to decide whether to submit to a breath test.[5] An arrestee must affirmatively ask to consult with counsel to exercise this right.[6] Whether a given inquiry consti-

---

1. *Ahtuangaruak v. State*, 820 P.2d 310, 311 (Alaska App.1991) (quoting *Gundersen v. Anchorage*, 792 P.2d 673, 677 (Alaska 1990)).

2. *See Crim v. Anchorage*, 903 P.2d 586, 588–89 (Alaska App.1995) (defendant's waiver valid even though he did not know the result of his breath test at the time he declined a blood test and therefore could not fully assess the advantages and disadvantages of obtaining a blood test); *Moses v. State*, 32 P.3d 1079, 1083–84 (Alaska App.2001) (rejecting claim that defendant's waiver was not knowing and intelligent where defendant understood the right to an independent test but was confused about whether an independent test would benefit him).

3. 671 P.2d 378, 382 (Alaska App.1983).

4. 813 P.2d 312, 313 (Alaska App.1991).

5. *Copelin v. State*, 659 P.2d 1206, 1208 (Alaska 1983).

6. *See Annas v. State*, 726 P.2d 552, 560 (Alaska App.1986) ("Annas ... never requested an opportunity to consult an attorney before taking the breath test. Consequently, he was not denied any of his rights under *Copelin*."); *Van Wormer v. State*, 699 P.2d 895, 897–98 (Alaska App.1985), *overruled on other grounds by Zsupnik v. State*, 789 P.2d 357 (Alaska 1990) (arrestee must request consultation with counsel); *Anchorage v.*

tutes a request to speak to an attorney is a question of fact the trial court assesses based on the totality of the arrestee's words.[7]

In this case, Judge Funk found that Wing merely commented that her cell phone was in her pocket, and then, "she said nothing further [about it]." He further found that Wing "did not state that she wanted to make another phone call, nor did she say that she wanted to look on her cell phone for [her attorney's] number." The judge concluded that she did not invoke her right to consult with an attorney.

Wing argues that Judge Funk's findings are clearly erroneous, but his rulings are supported by the record. Sgt. Yamamoto testified that Wing never asked to use her cell phone or indicated she wanted to look up a number on it. And Wing did not ask to make another phone call after she talked to her co-worker. In her testimony, Wing admitted that she never asked to make another call.

In *Anchorage v. Erickson*, the defendant was being driven to the police station for a breath test, and he asked the officer "whether he was in trouble and whether he might need an attorney."[8] Erickson admitted on cross-examination that he had not actually asked to contact an attorney.[9] This court upheld the trial court's finding that Erickson's comment was not an affirmative request to speak with an attorney.[10]

Given our decision in *Erickson*, it is clear that Wing did not invoke her right to call an attorney when she stated that her cell phone was in her pocket. Wing willingly used the police station phone to call her co-worker and then she made no further request to access a number on her phone, make another call, or to talk with an attorney. Judge Funk reasonably rejected Wing's claim that she was denied the opportunity to contact an attorney.

*The requirement that a DUI arrestee submit to a breath test does not raise an unconstitutional dilemma.*

■ As defined in AS 28.35.030(a), the offense of driving while under the influence may be prosecuted under either or both of two theories. Subsection (a)(1) of the statute defines the "under the influence" theory—the theory that the motorist was under the influence of intoxicants at the time of driving. Subsection (a)(2) defines the "blood alcohol level" theory—the theory that the motorist had a blood alcohol level of .08 percent or higher, as shown by a chemical test administered within four hours of driving.[11]

Wing argues that when a motorist is arrested for driving under the influence under the second theory (the "blood alcohol level" theory), it is unconstitutional to require the motorist to submit to a breath test—even though all motorists arrested for DUI are required by AS 28.35.032 to submit to the test.

Wing analogizes the motorist's situation to the unconstitutional predicament described in *Gudmundson v. State*, where hunters who shot game illegally were faced with committing an additional crime, no matter what they chose to do next: If they left the game where it was, they would violate the law that required them to salvage the meat; and if they took the meat with them, they would violate the law prohibiting the transporting of illegally taken game.[12] Wing contends that a motorist charged under subsection (a)(2) of the DUI statute faces the same sort of Hobson's choice.

Wing concedes that, for motorists charged under subsection (a)(1) of the statute (the "under the influence" theory), the breath test is a lawful search, because the test result merely provides *evidence* tending to prove or

*Erickson*, 690 P.2d 20, 21 (Alaska App.1984) (a defendant forfeits any rights under *Copelin* if he does not request counsel prior to taking or refusing the breath test); *Svedlund*, 671 P.2d at 382 (same).

7. *Van Wormer*, 699 P.2d at 898.

8. 690 P.2d at 21.

9. *Id.*

10. *Id.* at 22.

11. *See Valentine v. State*, 215 P.3d 319, 326–27 (Alaska 2009).

12. 822 P.2d 1328, 1332–33 (Alaska 1991).

disprove the allegation that the motorist was under the influence of intoxicants at the time of driving. But Wing argues that the situation is different for motorists charged under subsection (a)(2) of the statute. Wing contends that, for those motorists, the breath test result is an *element* of the crime (if the test result is .08 percent or higher). Thus, according to Wing, motorists in this situation are confronted with the choice of either refusing the test (which is a separate crime) or taking the test and (if the result is .08 percent or higher) committing the act that completes the crime of DUI under subsection (a)(2) of the statute.

Wing's argument is based on a misunderstanding of subsection (a)(2). Under this clause of the statute, a person commits DUI if they operate a motor vehicle and, "as determined by a chemical test taken within four hours after the alleged operating or driving, there is .08 percent or more by weight of alcohol in the person's blood."[13]

Wing interprets this statute to mean that the act of *breath testing* is itself an element of the crime. We disagree. The statute defines the crime as operating a motor vehicle and, within four hours of that conduct, having a blood alcohol level of .08 percent or higher. The breath test is simply a method of obtaining evidence that the motorist has, or does not have, a blood alcohol level above the statutory limit.

For these reasons, we reject Wing's contention that it is unconstitutional to require motorists to submit to a breath test if they are being charged under subsection (a)(2) of the DUI statute.

### *The breath test requirement is a valid search incident to arrest.*

■ Wing also argues that the DUI breath test was a valid search only when it was administered for the purpose of obtaining evidence for the "under the influence" theory, the crime for which she was arrested. Wing claims that the police illegally administered the breath test to search for evidence

of her guilt under the "blood alcohol level" theory, without having probable cause to arrest her for that offense.

In this case, according to the stipulated facts, Wing drove out of the parking lot of a bar, did not stop before entering the roadway, and failed to stop at two stop signs. She weaved while driving, almost going into the ditch and then jerking the wheel back and crossing the centerline. She admitted drinking two beers at the bar. And, according to the complaint, she had a strong odor of alcohol on her breath, bloodshot, watery eyes, slurred speech, poor dexterity, and poor balance. She performed poorly on the standardized field sobriety tests.

■ This evidence gave the police probable cause to believe Wing was guilty under either the "under the influence" theory or the "blood alcohol level" theory. Under these circumstances, the statutory requirement of a chemical breath test is a valid search incident to arrest.[14] When the police conduct a search incident to arrest, they may search for evidence of any crime for which they have probable cause.[15] Regardless of the theory of Wing's arrest, the police were authorized to search her for evidence relevant to either theory.

But even if the police did not have probable cause to believe Wing's blood alcohol level was .08 percent or over, the police could administer a breath test as a search incident to arrest for driving under the influence. The fact that the breath test may provide evidence of DUI under the "blood alcohol level" theory did not prohibit the police from conducting the search incident to arrest based on the "under the influence" theory.

■ We conclude that the statutory scheme that requires a DUI arrestee to take a chemical breath test is a valid search incident to arrest under either theory of DUI when there is independent evidence to charge the arrestee with driving under the influence.

---

**13.** AS 28.35.030(a)(2).

**14.** *Svedlund,* 671 P.2d at 384.

**15.** *See Baxter v. State,* 77 P.3d 19, 26 (Alaska App.2003).

*Conclusion*

We AFFIRM the district court's judgment.