Phillip D. CALAPP, Appellant,

v.

STATE of Alaska, Appellee.

No. A-5987.

Court of Appeals of Alaska.

May 22, 1998.

Stuart G. Ross, Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

Phillip D. Calapp was convicted by a Kenai jury of theft in the second degree. AS 11.46.130(a)(1). Superior Court Judge Jonathan H. Link sentenced Calapp to five years of imprisonment with two years suspended. Calapp appeals, arguing that Judge Link erred when he allowed the state to reveal to the jury Calapp's prior convictions for forgery and theft. We reverse.

On December 31, 1994, someone broke into the Kenai Pawn Shop and stole various items, including twenty-four envelopes containing jewelry. Four or five days later a woman brought two rings into the same shop to pawn them. The owner of the shop recognized the rings and loaned the woman one hundred dollars, in order to recover the rings and to obtain identification of the woman. The woman provided information identifying herself as Melinda Raysin. The next day, the police interviewed Raysin and learned that the rings had come from Calapp, Raysin's ex-boyfriend.

On January 9, 1995, a man attempted to pawn a watch at a jewelry store; an employee at the store suspected it was stolen and called the police. The man was later identified as Shawn Crandall. Crandall told the police that Calapp approached him on January 6th and again on the 7th and asked him if he wanted any jewelry. Calapp showed Crandall a watch and about eight rings that were in a plastic bag. Crandall took the watch and tried to sell it for Calapp, the agreement being that Crandall could keep any money in excess of $500. Crandall agreed to cooperate with the police by engaging Calapp in a recorded telephone call. During the call, Crandall told Calapp that he was "getting kind of leery on this deal here," and was concerned that he might "[g]et busted or something," voicing concern that Calapp's girlfriend knew about the jewelry. Calapp responded, "Well I don't see how.... [M]y old lady is cool." Crandall then arranged a meeting with Calapp at a bathroom in a shopping mall, during which the police entered and confronted Calapp.

Investigator Joe Harrison of the Kenai Police Department interviewed Calapp. In this interview Calapp told Harrison that he had received four rings and a watch from a man named Don Dushkin for a repayment of a debt. He admitted that he went with Raysin to the Kenai Pawn Shop, waited outside while she pawned two rings, and split the $100 with her which she received from the transaction. He admitted Raysin told him that the police interviewed her, and told her that the rings were stolen. Calapp admitted that he became suspicious that the property might be stolen; however, he insisted that he "didn't know for a fact that anything was stolen."

The state indicted Calapp for second degree theft on the theory that Calapp received, concealed, or disposed of stolen property valued at $500 or more with reckless disregard that the property was stolen and with the intent to appropriate property of another. AS 11.46.130(a)(1). Calapp testified at trial that he did not know where Dushkin got the jewelry, which Dushkin had in a sock in his trailer. He claimed that Dushkin told him that Dushkin's godfather had died and that he had received the property as an inheritance. Calapp claimed that he asked Dushkin if the property was stolen, and Dushkin had replied that it was not. Calapp testified that when he later found out that the jewelry might have been stolen, he tried to get it back from Crandall and turn it into the police.

During his direct examination, Calapp brought out that he had been convicted of a crime of dishonesty (larceny) in 1990.[1] Calapp explained the statements which he made in his interview with Investigator Harrison by stating that Harrison was a "longterm veteran police officer that's got a way with word games."

Following Calapp's testimony on direct examination, the prosecutor asked Judge Link to allow him to admit into evidence three other convictions of Calapp's: a 1989 conviction for forgery, a 1987 conviction for theft in the fourth degree, and a 1987 conviction for theft in the second degree. The prosecutor argued that these convictions were admissible to rebut Calapp's assertion that he was caught off guard when the police confronted him at the shopping mall and interviewed him, and to rebut Calapp's testimony which the prosecutor asserted had given the jury the general impression that Calapp was "an innocent neophyte" when in fact Calapp had several prior convictions and had spent "considerable time in prison." Judge Link decided to admit the prior convictions, but on a different theory than the theory argued by the prosecutor. Judge Link concluded that the convictions were admissible under Evidence Rule 404(b)(1) to rebut Calapp's assertion that his receipt and disposition of the stolen property was the result of a mistake or accident. The state was allowed to admit the prior convictions on this ground and Judge Link instructed the jury on the limited purpose for which the testimony was admitted. Calapp contends that admission of these convictions was error.

■ The admission of the challenged evidence is governed by Alaska Evidence Rules 403 and 404(b)(1). Under Rule 404(b)(1), evidence of Calapp's other crimes was admissible if it was relevant for some purpose other than to prove his criminal propensity; and under Rule 403, this evidence should have been excluded if its potential for unfair prejudice outweighed its proper probative value. A trial judge must apply a two-step analysis when determining whether to admit evidence of prior bad acts under these two rules. First, the judge must determine whether the evidence is relevant for a purpose other than to show criminal propensity.

---

1. This conviction was admitted under Evidence Rule 609 which provides as follows:

   **Rule 609. Impeachment by Evidence of Conviction of Crime.**

   (a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

   (b) **Time Limit.** Evidence of a conviction under this rule is inadmissible if a period of more than five years has elapsed since the date of the conviction....

   Calapp does not contest the admissibility of this conviction.

Second, the judge must weigh the probative value of the evidence against its potential for unfair prejudice. *Lerchenstein v. State,* 697 P.2d 312, 315–16 (Alaska App.1985), *aff'd* 726 P.2d 546 (Alaska 1986).

■ The major disputed issue at Calapp's trial was not whether the jewelry was stolen, but whether Calapp recklessly disregarded this fact—whether he was aware of a substantial and unjustifiable risk that the jewelry was stolen and consciously disregarded this risk. *See* AS 11.81.900(a)(3). The prior convictions that the state introduced—one conviction for forgery and two convictions for theft—certainly tended to show that Calapp was a dishonest and larcenous individual. But, standing alone, these convictions proved little of relevance except Calapp's general proclivity to lie and steal. Accordingly, these convictions should have been excluded under Rule 404(b) because they showed nothing but Calapp's criminal propensity.

■ The state argues that Calapp's convictions are relevant for another, more case-specific purpose: to prove Calapp's likely knowledge that the jewelry he was trying to sell through the two intermediaries was, in fact, stolen. However, under our past decisions on this topic, the state must show that the defendant's past criminal acts bear a relevant factual similarity to the charged offense before these past acts can be admitted to prove knowledge, intent, or absence of mistake or accident. *See Allen v. State,* 759 P.2d 541, 546–47 (Alaska App.1988) (upholding admission of a similar incident to rebut the defendant's "good Samaritan" defense to a charge of terroristic threatening); *Sheakley v. State,* 644 P.2d 864, 873–75 (Alaska App.1982) (where defendant was charged with mayhem for intentionally gouging out the victim's eye, this court upheld the admission of two prior incidents in which defendant attempted to gouge out others' eyes); *Adkinson v. State,* 611 P.2d 528, 530–32 (Alaska 1980) (upholding admission of evidence that the defendant had pointed a shotgun at trespassers on two previous occasions to rebut the defendant's assertion that his shooting of a trespasser had been an accident).

In Calapp's case, the state made no attempt to establish the facts of the prior forgery and theft convictions or to explain how those prior episodes bore any particularized relevance to the issue in this case— whether Calapp was aware that the jewelry was stolen. For all that the jury knew, Calapp may have forged a fishing license application and shoplifted an apple. Or he might have forged a Picasso and hijacked a truck full of stereo components. The point is that the jury heard only the unelaborated fact that Calapp had prior convictions for forgery and theft. This being so, the jurors had no reasoned basis for using this evidence for any purpose other than the purpose prohibited by Alaska Evidence Rule 404(b)— proof of Calapp's general propensity to lie and steal.

Under these circumstances, we conclude that the trial judge abused his discretion when he allowed the state to introduce the challenged convictions. Admission of this evidence created a substantial danger that Calapp was convicted based upon his prior record rather than based on the evidence properly relevant to the specific crime under consideration.

Calapp's conviction is REVERSED.

MANNHEIMER, J., concurs.

BRYNER, C.J., dissents.

MANNHEIMER, Judge, concurring.

I am writing separately to address the concerns raised in Judge Bryner's dissent.

Judge Coats's majority opinion asserts (page 388) that "under our past decisions [governing the admissibility of evidence of a defendant's other crimes], the State must show that the defendant's past criminal acts bear a relevant factual similarity to the charged offense before these past acts can be admitted to prove knowledge . . . or absence of mistake". Judge Bryner takes issue with this statement. He concludes that the trial court properly allowed the State to present evidence of Calapp's prior convictions for theft even in the absence of any foundational showing that those prior thefts bore a factual similarity to Calapp's present offense.

Judge Bryner relies on several federal cases which hold that, when the issue is the defendant's knowledge, evidence of the defendant's other crimes can be admissible even when those other crimes are not factually similar to the offense presently charged against the defendant. These federal cases declare that the relevant consideration is not the factual similarity of the crimes; rather, it is whether "the prior act was one which would tend to make the existence of the defendant's knowledge more probable". *United States v. Ramírez–Jiménez,* 967 F.2d 1321, 1326 (9th Cir.1992).

To the extent that the majority opinion could be read to require strict factual similarity of offenses when the issue is the defendant's knowledge, I agree with Judge Bryner that this would be a misstatement of the law. The federal cases in this area correctly point out that even when the defendant's prior crime is factually dissimilar, the defendant's participation in that other crime can nevertheless be probative of the defendant's pertinent knowledge.[1]

For example, in *United States v. Falco,* 727 F.2d 659 (7th Cir.1984), the defendant was charged with interstate transportation of stolen goods. The issue was whether the defendant knew that the goods were stolen. On this issue, the trial court allowed the government to introduce evidence of the defendant's four prior convictions for possession or transportation of stolen goods. 727 F.2d at 661–62. The Seventh Circuit held (by a 2 to 1 vote) that this evidence was properly admitted, even though the government did not attempt to show that the prior crimes were factually similar to the current charge.

The majority reasoned that evidence of the defendant's prior convictions was relevant because a reasonable trier of fact could conclude (1) that people involved in the possession and disposal of stolen goods would characteristically employ specialized techniques to carry on their work (techniques to conceal or misrepresent the origin of the goods, to hamper detection of the shipment, and the like); (2) that a person who had previously trafficked in stolen goods would be more likely to be familiar with these techniques and to recognize these techniques at work in connection with any particular shipment of goods; so therefore (3) if the defendant had previously trafficked in stolen goods, he would be more likely to understand, from the circumstances surrounding the present shipment of goods, that the goods were stolen. *Falco,* 727 F.2d at 663–65.

The majority conceded that this chain of reasoning might not ultimately prove convincing to the jury, but the test for relevance under Federal Evidence Rule 401 (and under Alaska Evidence Rule 401 as well) is whether the evidence "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable". The majority concluded that the defendant's involvement in other acts of transporting stolen goods was sufficiently probative of the defendant's knowledge to satisfy Rule 401, even if the goods or the methods of transportation were dissimilar.

As noted above, the majority's conclusion did not go unchallenged. Judge Cudahy, in dissent, argued that there was simply too much variation in thefts and in the methods of transporting stolen property to draw any meaningful inference from the bare fact that the defendant had previously been convicted of transporting stolen property. Judge Cudahy contended that these prior convictions should have been admitted only if the government demonstrated that the facts of the prior offenses bore some pertinent similarity to the present offense. *Falco,* 727 F.2d at 667–69.

I do not interpret Judge Cudahy's dissent to mean that he disagreed with the majority in principle. Judge Cudahy seems to agree with the majority that, when the issue is the defendant's knowledge, the law does not demand strict "similarity" between a defendant's past offenses and his present offense.

---

**1.** See *United States v. Vizcarra–Martínez,* 66 F.3d 1006, 1014–16 (9th Cir.1995) (as amended on denial of rehearing); *United States v. Santa–Cruz,* 48 F.3d 1118, 1119–1120 (9th Cir.1995); *United States v. Arambula–Ruiz,* 987 F.2d 599, 603 (9th Cir.1993); *Ramírez–Jiménez, supra; United States v. Hyman,* 741 F.2d 906 (7th Cir.1984); *United States v. Falco,* 727 F.2d 659, 663 (7th Cir.1984).

For instance, it is possible that a defendant's past participation in the smuggling of illegal aliens across international borders by truck might provide him with knowledge to facilitate the smuggling of cigarettes across state lines by airplane. As the federal courts recognize, the question is not the factual similarity of the acts, but whether one could reasonably infer, from the defendant's participation in the prior acts, that the defendant possessed knowledge pertinent to the present case.

Indeed, the defendant's past activities could be relevant on the issue of knowledge even when those past activities were completely legal. For instance, a defendant's past experience working as an auditor for the government or for a financial institution could provide the defendant with knowledge that would facilitate a later act of embezzlement or fraud. Again, the defendant's activities need not be "similar" in the sense that they constitute the same type of crime. The question is whether it can reasonably be inferred that those prior activities provided the defendant with a pertinent type of knowledge.

I do not read Judge Coats's majority opinion to mean anything different. Judge Coats speaks of the requirement that the defendant's past acts "bear a relevant factual similarity to the charged offense". I interpret this phrase to require "similarity" only in the sense that the defendant's prior acts must have been sufficiently analogous to the present offense so that it can reasonably be inferred that the defendant acquired knowledge that is pertinent to deciding the present case.

As *Falco* and *Ramírez–Jiménez* point out, this type of "similarity" can sometimes be inferred from the unelaborated fact of a conviction. But this is true only when the conviction itself, whatever the underlying facts, provides a reasonable basis for inferring the defendant's knowledge. This is not always the case.

For example, in *United States v. Vizcarra–Martínez*, 66 F.3d 1006 (9th Cir.1995) (as amended on denial of rehearing), the defendant was charged with conspiracy to possess, and wrongful possession of, a chemical (hydriodic acid) that he had reason to believe would be used to manufacture methamphetamine. The trial court allowed the government to introduce evidence that the defendant was found to be in possession of a small amount of methamphetamine (an amount sufficient only for personal use) at the time of his arrest. On appeal, the Ninth Circuit agreed with the defendant "that the fact that he used methamphetamine does not tend to prove that he was aware that the chemicals he was delivering would be used to manufacture methamphetamine or that he intended to participate in a conspiracy [to manufacture this drug]." *Id.*, 66 F.3d at 1014. The court stated:

> In order to admit evidence concerning other "bad acts", the government must prove "a logical connection between the knowledge gained as a result of the commission of the [other] act and the knowledge at issue in the charged act." [*United States v.] Mayans*, 17 F.3d [1174,] 1181–82 [ (9th Cir.1994) ]. Here, there exists no logical connection between the knowledge that the defendant might have gained by using methamphetamine and the knowledge that the government must prove . . .—that is, knowledge of the use to which the hydriodic acid would be put[,] as well as knowledge of the scope and purpose of the conspiracy.

> We conclude that . . . possession of a small amount of methamphetamine for personal use does not tend to prove that Vizcarra–Martínez was aware that hydriodic acid could be transformed into methamphetamine through a complicated manufacturing process. Viewing the case from "common human experience" [citation omitted], it is clear that most people who use drugs—indeed, most people who use *legal* chemical substances, such as cleaning fluid or paint or medicine—do so without having the faintest idea as to how the substance is produced or what ingredients are required to manufacture it. We simply cannot assume, as the government requests us to, that Vizcarra–Martínez's use of methamphetamine tended to prove that he knew that the chemical in his posses-

sion would be used in the methamphetamine manufacturing process.

*Vizcarra–Martínez,* 66 F.3d at 1014–15 (emphasis in the original).

*Vizcarra–Martínez,* like *Falco,* was a split decision. Judge Fernández dissented, arguing that the defendant's possession of methamphetamine "was relevant to undercut his total ignorance argument". 66 F.3d at 1018. Again, as in *Falco,* the dispute between the majority and the minority did not concern the proper standard of relevance; rather, the dispute was whether a probative inference could reasonably be drawn from the underlying facts.

Judge Bryner asserts that Calapp's two prior theft convictions raise a reasonable inference that Calapp knew and recognized the hallmark characteristics of stolen goods and the techniques involved in the trafficking in stolen goods. I, however, agree with Judge Coats that Calapp's theft convictions, standing alone and unexplained, fail to raise this inference. There is simply too much variation in theft. A person can steal repeatedly without ever being involved in the trafficking of stolen goods.

It is possible that, if the underlying facts of Calapp's prior thefts were examined, those thefts would prove relevant to assessing Calapp's guilty knowledge in the present case. However, the State relied solely on the fact that Calapp had been convicted of "theft". Because of this, the State failed to establish the relevance of Calapp's other crimes.

BRYNER, Chief Judge, dissenting.

The majority concludes that Calapp's prior theft convictions, standing alone, "proved little of relevance except Calapp's general proclivity to lie and steal" and that specific proof of factual similarity was required before these prior convictions could be admitted to prove that Calapp knew of or recklessly disregarded the stolen nature of the jewelry he possessed. I disagree.[1]

Federal courts, under essentially the same rules that prevail in Alaska, recognize that a defendant's prior convictions for crimes similar to a newly charged crime may properly be admitted to prove that the defendant acted knowingly in committing the new crime, even if the prior cases are not shown to be factually similar to the new case: "When offered to prove knowledge, ... the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1326 (9th Cir. 1992), *quoted in United States v. Arambula–Ruiz,* 987 F.2d 599, 603 (9th Cir.1993). *Accord United States v. Falco,* 727 F.2d 659, 663 (7th Cir.1984).

Here, the state was required to show that, when Calapp possessed the stolen jewelry, he knew it to be stolen or consciously disregarded the risk. No matter what the underlying circumstances of Calapp's prior theft convictions might have been, those prior convictions, by definition, entailed Calapp's possession of property that he knew or suspected to be stolen. Calapp's prior cases thus necessarily involved the same element of knowledge as his present case.

This unity of culpable mental state provides the common thread of relevance joining Calapp's past misconduct to his current case. That Calapp knowingly or recklessly possessed stolen property on past occasions made it palpably less likely, in the current case, that he could have remained naively oblivious of the fact that he was dealing with stolen jewelry.

Since Calapp's prior theft convictions tended "to make the existence of the defendant's knowledge more probable than it would be without the evidence," the prior convictions were relevant to prove Calapp's knowledge. *Ramirez–Jiminez,* 967 F.2d at 1326. *See also* A.R.E. 401 (defining relevant evidence to include all "evidence having any tendency to make the existence of any fact that is of

---

1. I do agree that Calapp's prior forgery conviction was not particularly relevant to establish his culpable mental state or discredit his claim of ignorance as to the stolen nature of the property involved in this case. Given my conclusion that Calapp's theft convictions were properly admitted, however, any error in admitting the prior forgery was clearly harmless.

consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Denison v. Anchorage,* 630 P.2d 1001 (Alaska App.1981) (emphasizing the minimal nature of Rule 401's definition of relevance).

Thus, notwithstanding the majority's assertions to the contrary, the relevance of Calapp's prior theft convictions had nothing to do with the prohibited inference of propensity—the inference that Calapp had stolen before and thus probably stole again. Instead, the relevance of the prior convictions flowed from their logical tendency to show that Calapp, with a solid history of knowingly possessing stolen property, was in a far better position than the average person to recognize stolen property when it came his way.

Nothing in the Alaska cases cited by the majority precludes the use of prior convictions to prove knowledge or reckless disregard under these circumstances. And other courts have not hesitated to admit evidence of prior convictions under virtually identical circumstances.

A case on point is *United States v. Falco,* 727 F.2d 659 (7th Cir.1984).[2] The defendant, Falco, was charged with violating 18 U.S.C. § 659, by possessing goods shipped in interstate commerce that he knew had been stolen. *See* 727 F.2d at 661. The trial court allowed the government, as part of its case in chief, to introduce evidence of Falco's four prior interstate theft convictions. *See id.* at 661–62. The court required, and the government made, no showing that the prior convictions involved facts similar to those of Falco's new case.

On appeal, Falco argued that, without specific evidence of factual similarity, the prior convictions were inadmissible to prove his knowledge in the current case. *See id.* at 662. In affirming Falco's conviction, the Court of Appeals for the Seventh Circuit expressly rejected this argument:

The question of relevancy here does not turn on the "similarity" of prior events in the way it might if testimony of prior or subsequent acts, rather than certifications of convictions for the same or related statutory offenses, were involved. Similarity of the underlying facts of the crimes is not the only basis on which the prior convictions could be considered relevant. Rather, extrinsic evidence in the form of convictions may be relevant on the issue of knowledge if, apart from facts demonstrating the similarity of the physical elements of the acts that gave rise to the inference of knowledge in the prior or subsequent convictions, the extrinsic offenses represented by the convictions are "of such a nature that [their] commission involved the same knowledge required for the offense charged."

*Id.* at 663 (citation omitted).

The court in *Falco* went on to "recognize that the probative value of the previous convictions would be enhanced and their relevance thus more readily established if the facts underlying those convictions that go to the issue of knowledge were similar to the facts in this case." *Id.* The court nevertheless found that the prior convictions were in and of themselves sufficiently probative to pass Federal Rule of Evidence 404(b)'s threshold test of relevance. *See id.* at 664. In so finding, the court also observed:

Defendant was free to attempt to undercut the probative value of the prior convictions, and hence their relevance, by distinguishing the facts underlying the previous convictions in response to the government's motion to admit. By failing to proffer such evidence, however, defendant allowed the determination of the relevance of the prior convictions to turn solely on whether the fact that defendant had previously been convicted of the same or similar statutory offense requiring knowledge of stolen goods was minimally probative on the issue of defendant's knowledge in this case.

2. For another analogous case, see *United States v. Arambula-Ruiz,* 987 F.2d 599, 603 (9th Cir. 1993) (prior conviction for possessing heroin with intent to distribute ruled admissible against defendant charged with conspiring to possess heroin with intent to distribute, since the prior conviction tended to establish defendant's knowledge of conspiracy's purpose, thus undermining defendant's claim "that he was an innocent bystander 'at the wrong place at the wrong time' ").

*Id.* at 663 (footnotes omitted). Finally, after carefully weighing the circumstances of Falco's case, the court concluded that the trial court had not abused its discretion in finding that the prejudicial potential of the prior crimes evidence did not outweigh its probative value. *See id.* at 666–67.

*Falco* is distinguishable from Calapp's case in only one significant respect: in *Falco*, the prosecution was allowed to introduce the disputed evidence of prior convictions as part of its case in chief, before Falco advanced any claim of lack of knowledge; here, by contrast, the disputed evidence came in only on rebuttal, after Calapp seized the initiative by testifying that he was ignorant of the stolen nature of the jewelry. This distinction provides a far stronger justification for admission of the prior crimes evidence here than was present in *Falco*, for Calapp's affirmative claim of ignorance begged for a response.

Nor can a compelling argument be made that the disputed evidence of Calapp's prior convictions was more prejudicial than probative. In context, proof of Calapp's prior theft convictions did little more than lift the deceptive veil of ignorance that Calapp himself wove around his actions; the evidence thereby enabled the jury to assess the likely scope of Calapp's knowledge from a realistic perspective: it allowed the jury to ask whether an experienced thief like Calapp could plausibly claim ignorance in the factual setting of this case. This is not an impermissible use of the prior convictions as propensity evidence.[3]

In the specific evidential setting of this case, *Falco*'s reasoning is sound and should be followed. In my view, the majority needlessly reverses an essentially errorless conviction.

Accordingly, I dissent.

---

**3.** The prohibited inference of propensity deals with proof of conduct, not mental state: it posits that conduct conforms to character and, thus, that a defendant's conduct on prior occasions will dictate the defendant's conduct on the current occasion. Here, the likelihood that Calapp's jury would have viewed the evidence of his prior theft convictions as propensity evidence—in other words, as evidence indicating that, because Calapp had acted like a thief on prior occasions, he probably acted like a thief on this occasion—seems slim. This is because Calapp openly admitted possessing and disposing of stolen jewelry, thereby effectively acknowledging that his actions were those of a thief. Calapp's defense was that his conduct was not what it seemed to be, since he did not suspect the jewelry to be stolen. To the extent that the prior crimes evidence eroded this defense, it did not rely on the prohibited inference of propensity to do so.