**Il Seung YANG, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8516.**

Court of Appeals of Alaska.

Feb. 11, 2005.

---

**26.** *Id.* at 108.

**27.** *Id.* at 109.

**304**

Deborah Burlinksi, Anchorage, for the Appellant.

Windy O. East, Assistant District Attorney, Kotzebue, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Il Seung Yang appeals his conviction for refusing to submit to a breath test following his arrest for driving while intoxicated.[1] Yang argues that his proficiency in English was so poor that he did not understand the offer of the breath test or his legal obligation to take the test. He argues in the alternative that the police failed to adequately advise him of the consequences of refusing the breath test.

Yang also challenges the trial judge's decision to allow the State to rebut these contentions by presenting evidence that Yang had taken the breath test on a prior occasion. And Yang argues that the prosecutor made statements to the jury implying that Yang had a prior conviction for driving while intoxicated, and that the trial judge should therefore have declared a mistrial.

Finally, Yang argues that the sentencing judge misconstrued the record when he concluded that Yang had engaged in bad driving in this case, and when he used this purported bad driving to justify an increase in the length of Yang's driver's license suspension.

For the reasons explained here, we reject all of Yang's contentions and we affirm his conviction and his sentence.

### Underlying facts

Early on the morning of June 23, 2002, two off-duty corrections officers went to the Kotzebue police station and reported that they had seen an Asian male driving a Toyota pickup truck very fast on Airport Way. According to the corrections officers, the pickup truck was weaving across the road, and they suspected that the driver might be intoxicated.

While they were in the police station making their report, the corrections officers happened to see the same pickup truck speed by the police station. Shortly afterward, the officers located this pickup truck parked in front of a hotel, and they radioed the truck's location to the police.

Kotzebue Police Officer Peter Steen contacted the truck's owner, Yang, in the lobby of the hotel. Yang confirmed that the truck was his, and he acknowledged that he had been driving the truck. Yang smelled of alcoholic beverages; he swayed as he stood, and he had red, watery eyes. Yang agreed to perform field sobriety tests; at the conclusion of these tests, Steen arrested him for driving while intoxicated.[2]

Yang was initially cooperative, but after he was transported to the Kotzebue jail for a breath test, he became less so. At the jail, Steen read Yang the "implied consent" form—warning Yang that, if he refused to take the breath test, he would be charged with a crime and would lose his driver's license, and also warning Yang that his refusal to take the test could be used against him in other proceedings. Yang responded, "I don't care," and he refused to take the test.

Based on these events, Yang was charged with driving while intoxicated and breath test refusal. Following a jury trial, Yang was acquitted of driving while intoxicated, but he

---

1. AS 28.35.032(f).

2. AS 28.35.030(a). This offense has since been renamed driving "while under the influence". *See* SLA 2002, ch. 60 (effective July 1, 2002).

was convicted of refusing to submit to the breath test.

*The trial judge's ruling that the State could introduce evidence of a prior occasion when Yang took the breath test*

■ Yang's defense to the breath test refusal charge was that his command of English was so poor that he had not understood Officer Steen's request to take the test or the warnings concerning the consequences of refusing the test.

Yang took the stand at his trial and testified (through an interpreter) that, because of his poor comprehension of English, he had not understood that he had been arrested for driving while intoxicated, nor had he understood that he would be charged with another crime for refusing to take a breath test. Yang asserted that he had not understood what Officer Steen said to him at the police station—that, in particular, he did not know the meanings of the words "charge" and "refusal". Yang testified that he did not understand that he was entitled to an independent test, nor that he would be charged with a separate crime if he did not take the breath test.

Following this testimony, the trial judge (Superior Court Judge Richard H. Erlich, sitting in the district court) permitted the prosecutor to cross-examine Yang regarding the fact that he had submitted to a breath test on a prior occasion.

(Apparently, Yang's prior experience with the breath test arose from Yang's 1999 prosecution and conviction for driving while intoxicated. Judge Erlich allowed the prosecutor to question Yang about the prior breath test, but he forbade the prosecutor from mentioning Yang's prior DWI conviction.)

On appeal, Yang argues that the State failed to establish that the circumstances surrounding the prior breath test were similar to the circumstances of the present case, and that Judge Erlich therefore abused his discretion by allowing this cross-examination. In particular, Yang contends that the State failed to make an offer of proof concerning

(1) whether Yang took the test or refused it on that prior occasion, (2) how the prior breath test was administered, (3) whether the breath test was administered at a police station or at the scene, and (4) whether Yang had a translator on that prior occasion.

Yang also argues that, even if the evidence was admissible, it was more prejudicial than probative and should therefore have been excluded under Evidence Rule 403.

Here is the disputed cross-examination:

*Prosecutor:* Mr. Yang, you ... testified that you didn't understand [the] term "refusal", isn't that right?

*Mr. Yang:* Yes.

*Prosecutor:* [But] this isn't the first time that you heard that term, [is] it?

*Mr. Yang:* It's first time.

*Prosecutor:* You were never asked to take a breath test prior to this incident?

*Interpreter:* He doesn't remember.

*Prosecutor:* Okay, Mr. Yang, isn't it true that, back in 1999, in Anchorage, you were asked to submit to a breath test by the Anchorage Police Department?

*Interpreter:* He doesn't remember whole lot, but what he remembers was the police [were] telling—showing him how to blow the machine, so he just follow and done that.

*Prosecutor:* Okay. So he did provide a breath sample at that time?

*Interpreter:* He didn't know [that] that was a breath test.

Yang relies on our decision in *Calapp v. State*[3] to support his claim that evidence of his prior breath test should have been excluded. The defendant in *Calapp* was prosecuted for second-degree theft after he took possession of stolen jewelry and participated in selling the jewelry at a pawn shop.[4] The major dispute at Calapp's trial was not whether the jewelry was stolen, but whether Calapp had recklessly disregarded the fact that it was stolen.

To rebut Calapp's claim that his receipt and pawning of the stolen jewelry was the

---

**3.** 959 P.2d 385 (Alaska App.1998).

**4.** *Id.* at 386–87.

result of a mistake or accident, the trial judge allowed the State to present evidence that Calapp had previously been convicted of theft and forgery.[5] This Court held (by a two to one vote) that this evidence should not have been admitted because the State failed to establish that the earlier incidents were relevant to assessing Calapp's knowledge that the jewelry was stolen.

Yang relies on language in Judge Coats's lead opinion in *Calapp*, in which Judge Coats suggested that the test for admissibility of a defendant's prior acts to prove knowledge is whether those acts "bear a relevant factual similarity to the [currently] charged offense".[6] But no other member of the Court joined this statement of law.

Judge Bryner dissented from the Court's decision; he concluded that Calapp's prior convictions were relevant even in the absence of proof that they arose from factually similar circumstances.[7] And Judge Mannheimer, in his concurring opinion, expressly agreed with Judge Bryner that, "[t]o the extent that [Judge Coats's] opinion could be read to require strict factual similarity of offenses when the issue is the defendant's knowledge, ... this would be a misstatement of the law".[8] According to the concurring opinion, "the question is not the factual similarity of the acts, but whether one could reasonably infer, from the defendant's participation in the prior acts, that the defendant possessed knowledge pertinent to the present case."[9]

Judge Erlich could reasonably conclude that this test was satisfied in Yang's case. Yang testified that he did not understand what the police were asking him to do when they offered him the breath test at the police station, nor did he understand that he would be charged with a separate crime if he refused to take the test. To rebut this testimony, the State was entitled to show that Yang had taken a breath test once before. Yang's prior experience was relevant because it tended to show that Yang was familiar with the breath test and that he did understand what Officer Steen was asking him to do.[10]

■ Judge Erlich could also properly conclude that this evidence was not unduly prejudicial. As explained above, Judge Erlich allowed the State to question Yang about the prior breath test, but he did not allow the State to elicit the fact that Yang's prior experience with the breath test arose out of a prosecution and conviction for driving while intoxicated. Moreover, as can be seen from the quoted excerpt of the trial, Yang was permitted to testify (in answer to the prosecutor's questions) that he had not understood the significance of the breath test any better on that prior occasion.

Judge Erlich instructed the jurors that they were to consider Yang's testimony about the prior breath test "only as it relate[d] to his knowledge and understanding." And the prosecutor, in final argument, referred only briefly to this evidence. Finally, we note that the jury acquitted Yang of driving while intoxicated—a strong indication that the jurors were not swayed by any possible suggestion that Yang was a repeat DWI offender.

For these reasons, we conclude that Judge Erlich did not abuse his discretion when he allowed the prosecutor to cross-examine Yang concerning the prior episode in which Yang took a breath test.

### *The prosecutor's remarks that purportedly required a mistrial*

■ Yang further contends that, when the prosecutor cross-examined him about the earlier breath test, the prosecutor violated the trial judge's protective order by adverting to Yang's prior conviction for driving while intoxicated.

---

5. *Id.* at 387.

6. *Id.* at 388.

7. *Id.* at 391–93.

8. *Id.* at 389.

9. *Id.* at 390 (Mannheimer, J., concurring).

10. See Alaska Evidence Rule 401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact ... of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The issue arose when the parties were debating whether the prosecutor could elicit testimony about Yang's earlier breath test. At that same time, Judge Erlich granted the prosecutor permission to question Yang about earlier occasions in which Yang had used a translator in court—to show that Yang was aware that he could ask for a translator if he had trouble understanding someone's English. (It appears that Yang did not ask for a translator when he was arraigned on the charges in the present case. The prosecutor wanted to cross-examine Yang on this point, to suggest that Yang's English proficiency was not as bad as Yang claimed.)

The prosecutor's cross-examination about Yang's prior use of interpreters prompted Yang's attorney to request a mistrial. Here is the disputed portion of that cross-examination:

*Prosecutor:* Mr. Yang, you do speak some English, isn't that right?

*Interpreter:* Some. He put the words together. He make—yeah. Taking a guess [at] what they are saying.

*Prosecutor:* But ... you're telling us that you don't understand difficult legal concepts, for example?

*Mr. Yang:* Yes.

*Prosecutor:* Mr. Yang, do you remember coming to court [on] the day that you were arrested on this DWI?

*Interpreter:* Yes, he remember.

*Prosecutor:* You didn't request a translator at that time, did you?

*Interpreter:* He ...

*Defense Attorney:* Your Honor, could we approach?

[Bench Conference:]

*Defense Attorney:* You know, I think it needs to be made clear to him when [the prosecutor] is talking about, or when he was arrested on *this* DWI, is what [the prosecutor] is thinking about.

*Prosecutor:* I said "on this one".

*Defense Attorney:* I don't—I didn't hear that, and I don't think [Mr. Yang] understood that. . . .

*Prosecutor:* I'll be—[I'll] make it more specific, but ...

*Defense Attorney:* The date ...

*Prosecutor:* .... that's why ...

[indiscernible simultaneous speech]

*The Court:* Okay.

[End of Bench Conference]

*Prosecutor:* Mr. Yang, do you remember coming to court after you were arrested on June 23, 2002, on this DWI?

*Interpreter:* Yes, he does.

*Prosecutor:* You didn't ask for a translator during your arraignment, did you?

*Mr. Yang:* Nobody ever mention ...

*Interpreter:* [The prosecutor] wasn't mentioning anything about translating; that's what he was saying.

*Prosecutor:* You knew you could have a translator in court with you, though, didn't you, if you didn't understand?

*Interpreter:* He didn't know that was—is regulation, [is] a choose that he had or not. He didn't know at that time.

*Prosecutor:* Mr. Yang, you had been to court before June 23, 2002, hadn't you?

*Mr. Yang:* Yes.

*Interpreter:* Yes.

*Prosecutor:* And while you were [in] court those times, you had a translator with you, didn't you?

*Defense Attorney:* Objection, Your Honor.

*The Court:* Approach [the bench].

[Bench Conference:]

*Defense Attorney:* ... What does [the prosecutor] mean by that? I mean, when is [the prosecutor] talking about?

*Prosecutor:* ... [I'm] talking about [prior] criminal cases. I'm leaving it general so that ...

*The Court:* [to the defense attorney] It's your choice.

*Defense Attorney:* What choice do I have?

*Prosecutor:* I said I'm leaving [the reference] general so [that] the jury doesn't hear that [Mr. Yang] went to court specifically on criminal cases.

*Defense Attorney:* Okay; okay. [But] my assertion is that [the prosecutor's question] is leading....

*Prosecutor:* Well, this is cross-examination.

*The Court:* This is cross-examination. So ... the objection is overruled. We, too, desire to keep [the reference] general.

[End of Bench Conference]

The defense attorney made no motion for a mistrial at this point. Instead, Yang's testimony continued. During Yang's redirect examination, he testified that he was currently involved in a court case with his landlord, and that his wife had been acting as his interpreter in that proceeding.

When the parties returned to court the following day, Yang's attorney asked Judge Erlich to declare a mistrial. As the ground for this mistrial, the defense attorney asserted that, "upon reflection", she had come to the conclusion that the prosecutor's reference to "this DWI" was a clear reference to Yang's prior DWI conviction. Judge Erlich denied the requested mistrial.

On appeal, Yang renews his argument that the prosecutor's references to "this DWI" constituted clear violations of Judge Erlich's order not to mention Yang's prior DWI conviction. But as can be seen from the above-quoted excerpt, the record simply does not support Yang's contention. Judge Erlich could properly conclude that when the prosecutor asked Yang about coming to court on "this DWI", the prosecutor's questions were exactly what they appeared to be: inquiries about Yang's failure to ask for a translator when he appeared for his arraignment in the case currently being litigated. There was no reference to Yang's prior DWI conviction.

Yang also argues on appeal that Judge Erlich should have granted a mistrial because the prosecutor "refer[red] to [Mr. Yang's] attendance ... at prior court hearings over [defense] counsel's objection". But Yang's attorney did not ask for a mistrial based on the prosecutor's reference to other court hearings. As can be seen from the above-quoted excerpt, the defense attorney's only objection to the prosecutor's question was that the question was leading. Judge

Erlich properly overruled this objection, since the prosecutor was engaging in cross-examination.

Moreover, the prosecutor never specified what these prior court hearings involved. The only other court proceedings that the jury heard about were the proceedings involving Yang and his landlord. Given this record, we reject Yang's implied contention that Judge Erlich was obliged to declare a mistrial *sua sponte*.

### The elements of the offense of breath test refusal

█ Yang argues that his trial jury was misinstructed on the elements of breath test refusal.

Judge Erlich instructed the jury that the elements of this offense were (1) that Yang was arrested for the offense of driving while intoxicated, (2) that Yang "was fairly advised that the refusal to submit to [the breath test] was a crime", and (3) that Yang "did knowingly refuse to submit to [the breath test]". In a separate jury instruction, Judge Erlich told the jury that, in this context, to "knowingly" refuse the breath test meant to refuse the test "with a fair understanding of the consequences [as to] the misdemeanor charge" that would result from the refusal.

Yang contends that Judge Erlich's instructions omitted one essential element of breath test refusal: he asserts that this offense requires proof that the motorist was advised that their refusal to submit to the breath test might be used against them in a civil, criminal, or other proceeding.

Yang's argument derives from the wording of AS 28.35.032(a). The pertinent portion of this statute reads:

If a person under arrest for operating a motor vehicle ... while under the influence of an alcoholic beverage, inhalant, or controlled substance refuses the request of a law enforcement officer to submit to a chemical test authorized under ... AS 28.35.031(a), or if a person involved in a motor vehicle accident that causes death or serious physical injury to another person refuses the request of a law enforcement officer to submit to a chemical test author-

ized under ... AS 28.35.031(g), after being advised by the officer that the refusal will result in the denial or revocation of the driver's license, privilege to drive, or privilege to obtain a license, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating a motor vehicle ... while under the influence of an alcoholic beverage, inhalant, or controlled substance, and that the refusal is a crime, a chemical test may not be given, except as provided by AS 28.35.035.

As can be seen, this statute seemingly requires the arrested motorist to be warned of three things: (1) "that the refusal [of the breath test] will result in the denial or revocation of [their] driver's license, privilege to drive, or privilege to obtain a license", (2) "that the refusal [of the test] may be used against [them] in a civil or criminal action or proceeding arising out of [their] operating a motor vehicle ... while intoxicated of an alcoholic beverage, inhalant, or controlled substance", and (3) "that the refusal [of the test] is a crime".

Yang infers that the three warnings listed in the statute are each essential elements of the offense. Indeed, the current Alaska pattern jury instruction on the offense of breath test refusal—Criminal Pattern Instruction No. 28.35.032(a) # 1 (revised 2003)—embodies Yang's viewpoint. This pattern instruction lists the giving of the three statutory warnings as an element of the crime.[11]

However, this interpretation of the statute is wrong. As we explain here, the one essential warning—the warning that *is* an element of the offense—is the warning that the defendant is legally obligated to take the test.

Although this warning might be communicated in various ways, the third of the warnings listed in AS 28.35.032(a)—that refusal to take the test is itself a crime—is sufficient to satisfy this requirement. The other two warnings listed in the statute may be a necessary foundation if the State intends to use a motorist's refusal for other purposes (such as circumstantial evidence of guilt in a prosecution for driving while under the influence, or as a basis for administrative revocation of the motorist's driver's license), but those warnings are not essential to proving that the motorist committed the offense of breath test refusal.

■ Breath test refusal is a crime of omission. That is, the gist of the offense is that the defendant failed to do something that the law requires. In crimes of omission, the State must prove that the defendant failed to perform the required act, but the State must also prove that the defendant was aware of the circumstance that created their legal duty to act. More specifically, "when a defendant is prosecuted for failing to act, the State must show that the defendant was aware of the circumstance that triggered the duty to act and that, being aware of this circumstance, the defendant chose to do nothing—*i.e.,* 'knowingly' refrained from acting."[12]

An arrested motorist's legal obligation to submit to a chemical test of their breath is not defined in the statute we have been discussing, AS 28.35.032(a). Rather, this duty is defined in AS 28.35.031(a), Alaska "implied consent" law. The pertinent portion of AS 28.35.031(a) declares that any person who operates a motor vehicle in this state "shall be considered to have given consent to a chemical test or tests of [their] breath for the purpose of determining the alcoholic content of [their] blood or breath" if (1) the person has been "lawfully arrested for an offense arising out of acts alleged to have

---

**11.** According to Pattern Jury Instruction No. 28.35.032(a) # 1, "the [government] must prove beyond a reasonable doubt [that] ... the defendant was advised that refusal to submit to a chemical test: (a) is a crime; (b) will result in the denial or revocation of the defendant's [driver's] license or privilege to drive or obtain a license; and (c) may be used against the defendant in a civil, criminal, or other proceeding".

**12.** *Willis v. State,* 57 P.3d 688, 694 (Alaska App. 2002). *See Kimoktoak v. State,* 584 P.2d 25, 29–31 (Alaska 1978); *Melson v. Anchorage,* 60 P.3d 199, 203 (Alaska App.2002) (although the State must prove the defendant's awareness of the circumstances, the State need not prove that the defendant was aware of the statute or regulation that imposed the legal duty under those circumstances).

been committed while the person was operating or driving a motor vehicle ... while under the influence of an alcoholic beverage, inhalant, or controlled substance", and (2) "[t]he test or tests [are] administered at the direction of a law enforcement officer who has probable cause to believe that the person was operating or driving a motor vehicle ... while under the influence of an alcoholic beverage, inhalant, or controlled substance".

AS 28.35.031(a) does not itself state that failure to take the breath test is a crime. Rather, a separate statute, AS 28.35.032(f), declares that it is either a misdemeanor or a felony (depending on the motorist's prior record) "[to refuse] to submit to a chemical test authorized under ... AS 28.35.031(a)".

Twice in the past, this Court has examined the interplay between the warnings listed in AS 28.35.032(a) and the government's required proof in a breath test refusal prosecution. Both times, we held that the specific warnings listed in AS 28.35.032(a) are *not* elements of the crime of breath test refusal.

In *Svedlund v. Anchorage,* 671 P.2d 378 (Alaska App.1983), a case that was prosecuted under a municipal ordinance governing breath test refusal, we examined the role of the warnings listed in AS 28.35.032(a). We drew a distinction between (1) cases in which a defendant is charged with driving while intoxicated, and the government wishes to introduce evidence of the defendant's refusal to take the breath test as circumstantial evidence of the defendant's consciousness of guilt, as opposed to (2) cases in which a defendant is charged with breath test refusal, and the government wishes to introduce evidence of the defendant's refusal to take the test because that refusal is the *actus reus* of the offense.[13]

With regard to the first category of cases, we followed our supreme court's decision in *Copelin v. State*[14] and held that, when the government offers the defendant's refusal to take the breath test as circumstantial evi-

dence in a prosecution for driving while under the influence (to show the defendant's consciousness of guilt), the warnings listed in AS 28.35.032(a) "establish[ ] a foundation for admitting [the] refusal evidence". We explained, "By requiring that the arrestee be informed of the consequences of his refusal[,] the [supreme] court meant to ensure that the [act of] refusal would in fact support an inference of guilt." [15]

But in the second category of cases—*i.e.,* when the defendant is being tried for breath test refusal—"[the defendant's] refusal to take the test *is* the offense, not merely evidence of the offense".[16] In such cases, we said, "the warnings required by the [statute] ... constitute a foundation for admission of the evidence of a defendant's refusal [but they] are not separate elements of the offense to be proved to a jury." [17]

We then examined what *mens rea* was required for the offense of breath test refusal. Noting that the breath test refusal ordinance did not prescribe a culpable mental state, we concluded that, at the least, the ordinance required proof of the motorist's negligence—*i.e.,* that the motorist "knew or reasonably should have known" of their obligation to take the test.[18] We acknowledged that the motorist's receipt of the warnings specified in AS 28.35.032(a) might be relevant to the issue of whether the motorist acted with negligence (or some higher culpable mental state).[19] But we emphasized that the failure of the police to adhere to the statutory warnings did not entitle the motorist to an acquittal:

> It is important to understand [that the] *mens rea* [of the offense] is not [the defendant's] knowledge of his intoxication or [the defendant's knowledge] of the adverse consequences he [would] suffer if he refuse[d] to take the [breath test] ..., but [rather] his knowledge of the purpose and the significance of the [breath] test, and

---

13. *Svedlund,* 671 P.2d at 384–85.

14. 659 P.2d 1206, 1212 n. 15 (Alaska 1983).

15. *Svedlund,* 671 P.2d at 384.

16. *Id.* at 385 (emphasis added).

17. *Id.*

18. *Id.*

19. *Id.*

his awareness that he [was] required to take the test.

*Svedlund,* 671 P.2d at 385. We explained that evidence that the defendant received the statutory warnings—or other warnings— might be relevant to determining whether the defendant understood the purpose of the breath test and the legal obligation to take the test. But, ultimately, the defendant's guilt hinges on the defendant's awareness that the breath test "was intended to produce material evidence" of the defendant's driving offense and that the defendant "was legally required" to take the test:

> It is possible that the [government] could establish ... that [the defendant] knew or should have known that the [breath test] was intended to produce material evidence of the [driving] offense and that [the defendant] was legally required to take the [breath test], without necessarily showing that the specific penalties for refusal were mentioned. The adequacy of the warning given to a DWI suspect of the consequences flowing from refusal to submit to a [breath test] should be determined on a case-by-case basis. Merely informing the suspect that refusal is a misdemeanor complies with the letter of the [statute] and does not violate due process as a matter of law. However, evidence of the defendant's knowledge of the consequences may be presented to the jury to consider and weigh to the extent that it is relevant to the *mens rea* element of the crime.

*Svedlund,* 671 P.2d at 385–86.

As noted above, the *Svedlund* case involved a municipal ordinance rather than the state statutes that are involved in Yang's case. However, in *Brown v. State,* 739 P.2d 182, 184–85 (Alaska App.1987), we followed *Svedlund* in construing the corresponding state statutes. In particular, we stressed in *Brown* that "our prior decisions establish that the warnings required by the statute ... are not elements of the offense." [20]

Fourteen years later, the Alaska Supreme Court ratified our construction of these statutes in *Snyder v. State Division of Motor Vehicles,* 31 P.3d 770 (Alaska 2001):

The crime of [breath test] refusal has two elements: (1) as *mens rea,* the defendant "must have known, or should have known, that the chemical test of breath or blood was requested as potential evidence in connection with the investigation of a charge that he or she was driving while intoxicated," and (2) as *actus reus,* "the state must show the act of refusing to submit to the test." *Brown,* 739 P.2d at 184–85.

*Snyder,* 31 P.3d at 776 n. 26.

Two caveats are in order.

First, as the *Svedlund* decision expressly acknowledges, the parties did not actively litigate the question of the precise culpable mental state that applies to the *mens rea* element of breath test refusal. *Svedlund* holds only that this culpable mental state is at least "negligence". *Brown* and *Snyder* affirmed the holding in *Svedlund,* but the litigants in *Brown* and *Snyder* did not argue that a higher culpable mental state—"recklessly" or "knowingly"—might apply to the defendant's awareness that the breath test was being requested in connection with the DWI investigation, and that the defendant was legally obligated to take the test. Thus, this issue potentially remains an open question.

Second, there is a certain tension between our two assertions in *Svedlund:* (1) that the three statutory warnings are not elements of the crime of breath test refusal, but yet (2) these warnings remain a necessary evidentiary foundation that the State must establish before introducing evidence of a defendant's refusal of the breath test in a prosecution for breath test refusal. If, in fact, the three statutory warnings are unnecessary to prove the crime, and if the crucial question is whether the defendant understood that they were legally obligated to take the test, then it seems incongruous to prohibit the State from introducing evidence of the defendant's refusal to take the test simply because the defendant did not receive warnings that are of no consequence to the decision of the case. For this reason, we are not certain of the continuing vitality of this portion of *Svedlund.*

**20.** *Brown,* 739 P.2d at 185.

However, Yang does not raise either of these issues. Rather, he argues only that the three warnings listed in AS 28.35.032(a) are elements of the State's proof in a prosecution for breath test refusal. *Svedlund* and *Brown* clearly hold that these statutory warnings are not elements of the crime. We therefore reject Yang's attack on the jury instructions.

*Yang's motion for a judgement of acquittal*

■ Before trial, Yang asked Judge Erlich to dismiss the breath test refusal charge. Yang argued that, in a prosecution for breath test refusal, the State was obliged to prove that the defendant received and *understood* the three warnings listed in AS 28.35.032(a). He contended that his lack of proficiency in English prevented him from understanding the three statutory warnings.

Judge Erlich declined to decide this issue until he had heard the evidence at trial. (Indeed, it is unclear whether Alaska law allows a defendant to seek pre-trial resolution of a criminal case on a disputed issue of fact.[21]) At the conclusion of the State's case, Yang raised this issue again, this time in a motion for a judgement of acquittal on the breath test refusal charge. Yang conceded that the State's evidence showed that he received the three warnings listed in AS 28.35.032(a), but Yang again argued that, due to his lack of proficiency in English, the State failed to show that he understood these warnings.

■ As we explained in the preceding section of this opinion, the three statutory warnings are not elements of the crime of breath test refusal. Thus, to prove the breath test refusal charge, the State was not obliged to prove that Yang understood these warnings. Rather, the State was obliged to prove that Yang understood (or reasonably should have understood) the purpose of the breath test, and that Yang understood (or reasonably should have understood) that he was legally required to take the test.

Judge Erlich concluded that, viewing the evidence in the light most favorable to the State, the evidence was sufficient to support a reasonable conclusion that Yang understood these things when he decided not to take the breath test. We agree.

We note, in particular, that the jury listened to a recording of the police contact with Yang. During the field sobriety tests, when Officer Steen asked Yang to perform a balance test that required Yang to count, Yang indicated that "my problem is English". Officer Steen explained the test again, and demonstrated it. Viewed in the light most favorable to the State, this tape showed that Yang followed Officer Steen's directions in performing the field sobriety tests, and that Yang responded appropriately to Officer Steen's questions by identifying himself and his vehicle, by confirming that he did not wear contact lenses or glasses, by stating that he had driven from Beach Road, and by denying that he had been driving recklessly. Moreover, when Yang testified at trial, he conceded that, after he told Steen that he had difficulty with English, "they kind of communicated smoothly".

It is true that Yang testified that he did not know the legal meanings of the terms "charge" and "refusal", and that he did not understand that he would be charged with another crime if he refused to take the breath test. The jury also heard testimony from Yang and another witness that Yang's proficiency in English was limited, and that Yang's wife handled the more complicated telephone orders at their restaurant.

But the jury also heard evidence suggesting that Yang knew English well enough to understand what Officer Steen was telling him. Yang testified that he was educated, that he owned his own business, that he had studied English for three years, and that he had lived in the United States for six years. Officer Steen testified that he was able to converse with Yang in English and that, during the DWI processing, Yang's answers were responsive to his questions and Yang never asked for a translator. Steen also testified that he had spoken with Yang in

---

**21.** *See Brown v. State,* 739 P.2d 182, 184 n. 2 (Alaska App.1987); *State v. Eluska,* 698 P.2d 174, 180 n. 9 (Alaska App.1985), *reversed on other grounds,* 724 P.2d 514 (1986).

English on earlier occasions—both during police contacts when Yang was the complainant, and when Steen was ordering food at Yang's restaurant.

This evidence, viewed in the light most favorable to the State, was sufficient to support a reasonable inference that, when Yang declined to take the breath test, he understood that he was being asked to take the test as part of the DWI investigation, and that he was legally obligated to take the test. Judge Erlich therefore properly denied Yang's motion for judgement of acquittal.

*Was the jury adequately instructed concerning Yang's defense?*

We now turn to the issue of whether the jury was adequately instructed concerning Yang's defense to the breath test refusal charge—the defense that his lack of proficiency in English prevented him from understanding the purpose of the test and his obligation to take the test.

This Court has previously held that, in prosecutions for breath test refusal, the State must prove that the defendant's refusal to take the test occurred *after* the defendant was warned of the legal obligation to take the test—that a conviction can not be founded on proof that the defendant refused to take the test and was *then* warned of the legal obligation to take the test, without being given an opportunity to reconsider the earlier refusal.[22]

■ From this proposition, one can infer that the warning must be given in a manner reasonably calculated to communicate the necessary information to the defendant (*i.e.,* the information concerning the purpose of the test and the defendant's legal duty to take the test). And when the warning is given in English, a jury may reasonably consider whether the defendant has difficulty understanding the English language when the jury assesses whether the defendant's refusal to take the breath test was accompanied by the required culpable mental state.[23]

■ As explained earlier in this opinion, *Svedlund* and *Brown* hold that this required culpable mental state is at least "negligence". That is, the State must prove, at a minimum, that a reasonable person in the defendant's position would have understood the warnings concerning the defendant's legal obligation to take the test (even if the defendant did not subjectively understand these warnings).

Yang's jury was actually instructed to hold the State to a higher standard. As we noted earlier, Judge Erlich instructed the jury that Yang should not be convicted of breath test refusal unless the jurors were convinced beyond a reasonable doubt (1) that Yang was "fairly advised" that his refusal to submit to the breath test was a crime, and (2) that Yang acted "with a fair understanding of the [criminal] consequences" when he refused to take the test.

These instructions—particularly the requirement that Yang have a "fair understanding of the ... consequences"—seem to require proof that Yang subjectively understood his legal obligation to take the breath test (and not just that a reasonable person in Yang's position would have understood the obligation). By inserting this element of subjective understanding into the instructions, Judge Erlich apparently required the jury to find that Yang acted "knowingly" or at least "recklessly" regarding his legal obligation to take the breath test, as these culpable mental states are defined in AS 11.81.900(a).[24] In this respect, therefore, the jury instructions arguably required the State to prove more than is required under *Svedlund* and *Brown.*

Indeed, when the attorneys argued the case to the jury, both of them focused on the issue of Yang's subjective understanding of his duty to take the breath test. During

---

**22.** *See Suiter v. State,* 785 P.2d 28, 30–31 (Alaska App.1989).

**23.** *Cf. Ahtuangaruak v. State,* 820 P.2d 310, 311 (Alaska App.1991) (concluding that suppression of the defendant's breath test was warranted because the defendant's English was so poor that he could not make a knowing and intelligent decision regarding his right to an independent chemical test).

**24.** *See* AS 11.81.900(a)(2) (the definition of "knowingly") and AS 11.81.900(a)(3) (the definition of "recklessly").

their summations, both the prosecutor and Yang's defense attorney emphasized that the jury's decision on the breath test refusal charge "[came] down to whether or not ... Mr. Yang understood English."

We therefore conclude that Yang's jury was adequately instructed on his defense to the charge of breath test refusal.

*Yang's challenge to Judge Erlich's decision to revoke his driver's license for 18 months*

 In his final point on appeal, Yang challenges one aspect of his sentence for breath test refusal—the revocation of his driver's license. Judge Erlich revoked Yang's driver's license for 18 months, based on Yang's poor driving preceding his arrest. Yang asserts that the record does not support the conclusion that his driving was bad.

Yang notes that the jury acquitted him of driving while intoxicated and of the lesser offenses of reckless driving and negligent driving. He argues that there was simply too little evidence of bad driving to support Judge Erlich's finding.

We have examined the record, and we conclude that Judge Erlich's finding that Yang drove recklessly is supported by sufficient evidence.

James Rea (a corrections sergeant in Kotzebue) testified that while he was waiting to turn onto Airport Way, a Toyota pickup truck driven by an Asian male drifted so far across the road that it almost collided with his vehicle. Rea tried to follow this pickup truck into town, but the truck was being driven so fast that Rea could not keep up. Later, when Rea was at the police station reporting this incident, he heard a vehicle "peel out" and then he saw the same Toyota pickup truck "racing by" in front of the police department. Yang was later identified as the driver of this truck.

Given this evidence, Judge Erlich could reasonably conclude by a preponderance of the evidence [25] that Yang was driving recklessly shortly before he was arrested and then refused to take the breath test. Accordingly, we conclude that Judge Erlich was not clearly mistaken when he revoked Yang's license for 18 months as part of Yang's sentence for breath test refusal.

*Conclusion*

The judgement of the district court is AFFIRMED.

---

**25.** *See* AS 12.55.025(i); *Brakes v. State*, 796 P.2d 1368, 1372 (Alaska App.1990).